# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1150

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Luis Navarrete-Barron, a/k/a | * | |
| Luis Navarrete, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 1999
Filed:   September 21, 1999

_____

Before HANSEN and MAGILL, Circuit Judges, and JONES,[1] District Judge.

_____

HANSEN, Circuit Judge.

After a bench trial, the district court[2] found Luis Navarrete-Barron guilty of one count of conspiracy to distribute cocaine, cocaine base, and marijuana, and one count

_____

[1] The Honorable John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

[2] The Honorable Thomas M. Shanahan, United States District Judge for the District of Nebraska.

of possession with intent to distribute cocaine base. The district court sentenced Navarrete-Barron to 151 months in prison. In this appeal, Navarrete-Barron challenges the denial of his pretrial motion to suppress evidence, his conviction for possession with intent to distribute cocaine base, and the district court's determination of his base offense level for sentencing purposes. Finding no error, we affirm.

## I. Background

On the morning of June 11, 1994, police officers arrested Jaime Garcia for driving under the influence after stopping him for a traffic violation. After a failed attempt by Garcia to bribe the arresting officer with an offer of $10,000 in exchange for his release, the officer searched Garcia's car. The search produced the following items: 14 ounces of crack cocaine, $37,000 in cash, and ammunition for a 9 millimeter handgun. The officer did not discover a weapon. On Garcia's person, the officer found a key to room number 14 of a local motel. Garcia told the officers that he did not own the car. He claimed that his friend "Luis," with whom he was staying at the motel, recently purchased the vehicle. A police officer immediately began surveillance of room 14 and, shortly thereafter, spotted Navarrete-Barron through a window and an open doorway. Before police officers could obtain a search warrant, a pickup truck arrived. The driver of the truck entered the motel room for a short time and made a quick telephone call. Navarrete-Barron and the driver then exited the motel room with a duffel bag and drove away in the truck. Approximately one-half mile later, two police officers stopped the truck. The officers drew their guns and ordered the driver and the passenger (Navarrete-Barron) to exit the truck with their hands in the air. After the police officers finished handcuffing the two men and placing them in separate squad cars, the driver admitted through an interpreter that he was in the United States illegally. The officers performed a routine inventory search of the truck and found a beeper, cell phone, and recharger. In the duffel bag, the officers discovered the title to the car that Garcia was driving earlier that morning. The title indicated that the car had

been transferred the previous day to Luis Jesus Navarrete-Barron (defendant). The police then arrested Navarrete-Barron.

Prior to the morning of June 11, 1994, Navarrete-Barron had participated in numerous drug transactions with several other persons. Navarrete-Barron's drug activity began in 1993. Luis Martinez testified about three instances where he saw his cousin, Navarrete-Barron, in Omaha, Nebraska with Jesus Martinez (Luis's father). On each of these occasions, Jesus delivered large quantities of either marijuana or cocaine (powder) to Luis Martinez. The evidence also shows that Jesus delivered portions of that same marijuana and cocaine to Navarrete-Barron. In addition, Dianne Cervantes testified about several trips she made delivering cannisters of money from Isauro Amaya in Omaha to Navarrete-Barron in Denver. Isauro Amaya, Fernando Ibarra (the driver of the pickup truck), Luis Martinez, and Navarette-Barron were all purchasing drugs from Mexico through Jesus Martinez.

Garcia testified that when the police arrested him, he was on his third trip to Omaha with the defendant. Navarrete-Barron arranged all three trips. Garcia rode to Omaha in Navarrete-Barron's car during the first trip, he traveled by plane during the second trip after Navarrete-Barron paid for Garcia's ticket, and on the third trip he rode with Navarrete-Barron and Ibarra in a truck owned by Amaya. During this third trip on June 10, 1994, Navarrete-Barron bought the car that Garcia was driving when Garcia was arrested. Later that day, Navarrete-Barron and Garcia met at Amaya's house. Ibarra was also at Amaya's house. While there, Garcia saw Navarrete-Barron and Amaya handling crack cocaine and putting it in smaller bags. He also saw them counting sums of money in excess of $20,000. Navarrete-Barron and Garcia left Amaya's house, spent some time drinking at a local bar, and then returned to the Sandman motel to a room rented for them by Amaya. Amaya had, in the meantime, dropped off their suitcases (containing the cocaine base and money) at the motel for them. Early the next morning, Garcia left in Navarrete-Barron's car and was later arrested. When Ibarra arrived at the motel to pick up Navarrete-Barron the next

3

morning, Ibarra made a call to Dianne Cervantes before they left. Ibarra told her that Garcia had taken some money and cocaine. Ibarra and Navarrete-Barron then left in Ibarra's truck and were arrested soon after.

## II. Discussion

## A. Denial of Motion to Suppress

Navarrete-Barron contends that the district court erred in denying his motion to suppress the evidence obtained from the stop of the pickup truck in which he was a passenger. The district court found that the police officers made a valid investigatory stop of the truck based on reasonable suspicion that the occupants of the vehicle were engaged in criminal activity. See Terry v. Ohio, 392 U.S. 1, 25-31 (1968). Navarrete-Barron claims that the police officers who stopped the truck actually made an illegal arrest without probable cause, and thus his motion to suppress should have been granted. We review the district court's factual findings for clear error and its determinations of probable cause and reasonable suspicion de novo. See United States v. Beck, 140 F.3d 1129, 1133 (8th Cir. 1998).

An investigatory, or Terry, stop without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot. See Terry, 392 U.S. at 25-31. When justifying a particular stop, police officers "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." See id. at 21. A Terry stop may turn into an arrest if the stop lasts for an unreasonably long time or if officers use unreasonable force. See Dunaway v. New York, 442 U.S. 200, 212 (1979). During a Terry stop, officers can check for weapons and may take any additional steps that are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." See United States v. Hensley, 469 U.S. 221, 235 (1985). Officers must, however, employ the least intrusive means of detention and

4

investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the Terry stop. See Florida v. Royer, 460 U.S. 491, 500 (1983). In deciding whether to conduct a Terry stop, an officer may rely on information provided by other officers as well as any information known to the team of officers conducting the investigation. See United States v. Robinson, 119 F.3d 663, 666-667 (8th Cir. 1997).

After reviewing the evidence, we find that the officers made a valid Terry stop of the truck and later had probable cause to arrest Navarrete-Barron. First, the initial stop was supported by a reasonable and articulable suspicion of criminal activity. Earlier that morning, officers had discovered a large amount of cocaine base along with $37,000 and firearm ammunition. This discovery provided direct and substantial evidence of Garcia's involvement in drug trafficking activity. Garcia's statements to the police about a "Luis" back at the motel who had recently purchased the vehicle coupled with a key to the motel room provided enough evidence to support an inference that others were engaged in drug trafficking. Police officers later corroborated Garcia's statements during their surveillance of the motel room. In sum, the officers had a reasonable and articulable suspicion sufficient to make a valid Terry stop of the truck in which Navarrete-Barron was a passenger.

In the circumstances of this case, we also find that the officers did not use unreasonable force when they approached the truck with their weapons drawn. At the time of the stop, the officers had a reasonable suspicion that the occupants of the truck had been or were engaged in drug trafficking, which very often is accompanied by dangerous weapons. In addition, the 9 millimeter ammunition from the earlier stop constituted a reasonable basis to believe that one of the truck occupants could be carrying the missing 9 millimeter weapon. Therefore, the officers were justified in approaching the truck with their weapons drawn because it was reasonably necessary for their protection.

The limits of a Terry stop were also not exceeded when the defendant was handcuffed and placed in a police car while the officers searched the truck. There were two suspects and only two officers at the scene at the time of the initial stop. In United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992), which involved three officers and six suspects in the area, we agreed that it was reasonable for officers to handcuff two of the suspects during a Terry stop for suspected drug activity. Several other circuits also have found that using handcuffs can be a reasonable precaution during a Terry stop. See, e.g., United States v. Laing, 889 F.2d 281, 285 (D.C. Cir. 1989), cert. denied, 494 U.S. 1008 (1990) and 494 U.S. 1069 (1990); United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989); United States v. Hastamorir, 881 F.2d 1551, 1557 (11th Cir. 1989); United States v. Glenna, 878 F.2d 967, 971-73 (7th Cir. 1989), United States v. Taylor, 716 F.2d 701, 709 (9th Cir. 1983). In light of the dangerous nature of the suspected crime of drug trafficking and the good possibility that the driver or passenger had a weapon, the defendant's confinement with handcuffs in the back of a police car during the search of the truck was reasonably necessary to maintain the status quo, protect the officers, and allow them to conduct the search of the truck immediately and without interference. Furthermore, the detention did not last for an unreasonably long time before probable cause was established to arrest the defendant because the inventory search of the truck occurred shortly after the defendant was safely detained in the police car. Thus, because the officers did not use unreasonable force and did not hold the defendant for an unreasonably long detention during the Terry stop, we reject Navarrete-Barron's claim that the stop was an arrest without probable cause.

We also find that the search of the truck by the officers during the Terry stop passes constitutional muster. It is well established that once reasonable suspicion is established, a search of a vehicle's interior is permissible regardless of whether police officers have removed the occupants of the vehicle. See Michigan v. Long, 463 U.S. 1032, 1052 (1983); United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991). Ibarra, the driver of the truck, also admitted shortly after

the stop that he was in the United States illegally. (See Hearing Tr. on Navarrete-Barron's Motion to Suppress at 20-22.) At that point, the officers had probable cause to arrest Ibarra and thus to conduct a routine inventory search of the vehicle he was driving and its contents. Therefore, even if the officers exceeded the scope of a Terry search, they had sufficient independent probable cause to conduct the inventory search of the automobile pursuant to Ibarra's arrest.

In addition, we conclude that any error in regard to evidence found during the inventory search was harmless because none of the evidence recovered from the truck was admitted at Navarrete-Barron's trial. The only evidence Navarrete-Barron objects to is his identification by the officers as one of the people found in the pickup truck. Even if the inventory search was not valid, however, we have already determined that the officers had the requisite reasonable and articulable suspicion to stop the truck for questioning, which includes at a minimum the right to discover the identity of those in the vehicle. See United States v. Abokhai, 829 F.2d 666, 669 (8th Cir. 1987) ("Briefly detaining a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information is considered an essential ingredient of good police work."), cert. denied, 485 U.S. 907 (1988). See also Adams v. Williams, 407 U.S. 143, 145-46 (1972). Thus, Navarrete-Barron's identity would have been discovered anyway. Also, Navarrete-Barron himself admitted at trial that he was with Ibarra when the officers stopped the truck. (Trial Tr. at 337-38.) Therefore, even if there was error during the search, any effect on Navarrete-Barron at trial was harmless.

After reviewing the district court's factual findings for clear error and its legal conclusions de novo, we find that there was no need to suppress any evidence from the stop of the pickup truck. Thus, we uphold the district court's denial of Navarrete-Barron's suppression motion.

## B. Sufficiency of Evidence for Count II

Navarrete-Barron contends that there was insufficient evidence to establish that he was guilty of possession of cocaine base with intent to distribute, and thus his conviction under Count II for possession with intent to distribute cocaine base should be overturned. In an appeal from a bench trial, we review the district court's finding of guilt under a sufficiency of the evidence standard, determining whether there is substantial evidence to support the guilty verdict. See United States v. O'Malley, 854 F.2d 1085, 1087 (8th Cir. 1988). When reviewing the sufficiency of the evidence to sustain a conviction, we view the evidence in the light most favorable to the guilty verdict, "accepting as established all reasonable inferences tending to support the verdict." See United States v. Lyon, 959 F.2d 701, 705 (8th Cir. 1992).

The government proceeded against Navarrete-Barron on Count II using a Pinkerton theory of vicarious criminal liability. See Pinkerton v. United States, 328 U.S. 640, 647-48 (1946). We have said that "[u]nder Pinkerton, each member of a conspiracy may be held criminally liable for any substantive crime committed by a co-conspirator in the course and furtherance of the conspiracy, even though those members did not participate in or agree to the specific criminal act." United States v. Golter, 880 F.2d 91, 93 (8th Cir. 1989) (citations omitted).

In order to convict Navarrete-Barron of possession with intent to distribute cocaine base under 21 U.S.C. § 841, the government must first prove that Garcia knowingly or intentionally possessed 50 or more grams of cocaine base with intent to distribute. The government must then prove that Navarrete-Barron and Garcia were members of a conspiracy at the time of the possession, that the possession of the cocaine base was in furtherance of the conspiracy, and that Garcia's possession could have been reasonably foreseen by Navarrete-Barron as a natural outgrowth of the conspiracy. See Pinkerton, 328 U.S. at 647-48.

There is little doubt that Garcia knowingly possessed the cocaine base with intent to distribute. Garcia was present during the packaging of the cocaine base. A police officer found the cocaine base in Garcia's possession and Garcia offered the arresting officer $10,000 to release him even before the officer had discovered the drugs or cash. There is also little doubt that Navarrete-Barron and Garcia were involved in the conspiracy of which Navarrete-Barron was convicted. In this circuit only slight evidence connecting a defendant to a conspiracy is necessary to convict that defendant once an existing conspiracy is otherwise established, and the government does not have to prove that a defendant knows all the details of the conspiracy. See United States v. Foote, 898 F.2d 659, 663 (8th Cir.), cert. denied, 498 U.S. 838 (1990) and 498 U.S. 938 (1990). But cf. Brent E. Newton, The Antiquated "Slight Evidence Rule" in Federal Conspiracy Cases, 1 J. Appellate Prac. & Process 49, 53 & n.23 (1999) (criticizing the Eighth Circuit's use of the "slight evidence" standard). There is considerably more than slight evidence, based on the facts set out in Part I of this opinion, to tie Garcia to the conspiracy to distribute illegal drugs of which Navarrete-Barron was a full-fledged member.

Finally, there is sufficient evidence showing that the cocaine base found with Garcia was part of the conspiracy to distribute charged in Count I and was possessed in furtherance of that conspiracy. Garcia himself saw Navarrete-Barron handling the cocaine base and money the day before the arrest. Police officers found the cocaine base in Navarrete-Barron's car. The same people involved in previous cocaine and marijuana transactions were present during the packaging of the cocaine base found in Garcia's possession. Thus, it is not difficult to conclude that the cocaine base found in Garcia's possession was part of the distribution conspiracy charged in Count I, especially after Navarrete-Barron was seen handling it the night before with the same people involved in previous drug transactions, and when Navarrete-Barron and Ibarra left the motel to go look for Garcia after he had left with the money and drugs. For the same reasons, there is more than sufficient evidence to find that Garcia's possession of the cocaine base was reasonably foreseeable to Navarrete-Barron. Accordingly, based

9

upon all the evidence, we conclude that the district court did not err in finding Navarrete-Barron guilty of possession of cocaine base with intent to distribute.

## C.  Sentence

Because we find that there was sufficient evidence to convict Navarrete-Barron under Count II, we find no error in the base offense level selected (34) nor in the sentence imposed on the defendant (151 months) under the U.S. Sentencing Guidelines. Even if we were to reverse Navarrete-Barron's conviction under Count II, the 392 grams of cocaine base handled by Navarrete-Barron and found in his car would still be part of the sentence imposed under the conviction in Count I as "part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S. Sentencing Guidelines Manual § 1B1.3(a)(2)(1998).  See also United States v. Strange, 102 F.3d 356, 359 (8th Cir. 1996); United States v. Geralds, 158 F.3d 977, 979 (8th Cir. 1998), cert. denied, 119 S. Ct. 1280 (1999).  Thus, Navarrete-Barron's challenge to his sentence fails.

## III.  Conclusion

For the reasons stated above, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.