**UNITED STATES of America,
Plaintiff,**

v.

**Jose RAMIREZ–CUBILLAS,
Defendant.**

**No. 4:02CR3058.**

United States District Court,
D. Nebraska.

Aug. 21, 2002.

Carlos A. Monzon, Federal public Defenders Office, Lincoln, NE, for Defendant.

Steven A. Russell, Asst. U.S. Atty., Lincoln, NE, for U.S.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter is before the court on the magistrate judge's report and recommendation (filing 22). No objections to the report and recommendation have been filed.

Pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, I have reviewed de novo the report and recommendation, together with the transcript of the evidentiary hearing that was conducted by the magistrate judge on June 26, 2002 (filing 21). I find that inasmuch as the magistrate judge has fully, carefully, and correctly found the facts and applied the law, the recommendation should be adopted and the defendant's motion to suppress (filing 10) and motion to dismiss (filing 11) should each be denied in all respects.

Accordingly,

IT IS ORDERED that:

1) the magistrate judge's report and recommendation (filing 22) is adopted;

2) the defendant's motion to suppress items of physical evidence and statements (filing 10) is denied; and

3) the defendant's motion to dismiss due to loss of material evidence (filing 11) is denied.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

The "Motion to Suppress Items of Physical Evidence and Statements," filing 10, and "Motion to Dismiss Due to Loss of Material Evidence," filing 11, were heard on June 26, 2002.

Defendant's motion to suppress seeks exclusion of any and all evidence gathered as a result of a stop and subsequent search of the vehicle he was driving on March 20, 2002. The defendant claims that his Fourth Amendment rights were violated in that Trooper Jeff Crymble had no basis for reasonable suspicion or probable cause to believe that any violation of the law had occurred, that he unlawfully stopped defendant's vehicle, and that he searched the vehicle without probable cause to believe it was being used for illegal conduct, and without the valid consent from the defendant. He alleges that after he was detained, statements were obtained from him that were involuntary and in violation of his rights under *Miranda*. He further alleges that his Sixth Amendment right to counsel was violated.[1] See, filing 10 at ¶¶ 3–5.

Defendant's motion to dismiss alleges that his Fifth and Sixth Amendment rights were violated when the government deported ten witnesses who were passengers in his vehicle at the time of the traffic stop. The defendant alleges that these witnesses were material to the defense of his case and can testify concerning the actions of Trooper Crymble prior to the vehicle stop, the speed of defendant's vehicle prior to the stop, and "any and all other facts and circumstances around defendant's stop, seizure and custodial interrogation." Fil-

---

1. The defendant's oral and written arguments do not address the alleged denial of his right to counsel. Since this argument was not advanced by the defendant, I consider it abandoned.

ing 11 at ¶ 5. The defendant alleges that the government's deportation of these witnesses, without first affording the defendant an opportunity to participate in their interviews or ask them questions material to his defense, constitutes bad faith and resulted in defendant losing the ability to present exculpatory testimonial evidence necessary to his defense. *Id.* at ¶ 6–8.

For the reasons set forth herein, I shall recommend denying defendant's claim that evidence be suppressed under the Fourth, Fifth, and Sixth Amendments. I shall also recommend that defendant's motion to dismiss be denied.

On March 20, 2002, at approximately 4:30 p.m. (M.S.T.), the defendant was driving a large white Chevy van eastbound on Interstate 80 near the east side of Ogallala, Nebraska. At that same time Trooper Crymble was traveling westbound on the interstate at this location. His radar detection equipment indicated that the defendant's vehicle was traveling 83 miles per hour in a 75 mile per hour zone. Although the defendant testified that he was traveling 73–74 miles per hour with his cruise control set, he had never checked the vehicle's speedometer to determine if it was accurate. Trooper Crymble had been trained and was fully qualified to operate "Moving and Stationary Dopler Radar Equipment." (See, Exhibit 1). He had checked the accuracy of his radar equipment at the start of his March 20 shift, and re-checked the accuracy at the end of that shift. On both occasions, the equipment was functioning properly.

Trooper Crymble turned his patrol car around and proceeded west behind the defendant. He activated his lights, and initiated a traffic stop for speeding.[2] Defendant's vehicle stopped in a quarter of a mile. Prior to this traffic stop, the only vehicle occupant the officer could see was the driver.

Trooper Crymble exited his vehicle and approached the driver's side of the vehicle to speak with the defendant. As he passed by the rear driver's side windows, Trooper Crymble looked into the van and saw approximately ten individuals lying head to toe throughout the entire back portion of the vehicle, with a seated passenger in the front. Trooper Crymble asked the defendant to produce his driver's license, vehicle registration, and proof of insurance. The defendant had no driver's license or identification, and the temporary Colorado vehicle registration did not list the defendant as an owner.

Since the defendant could not produce a driver's license or identification card, and the vehicle was not registered in his name, Trooper Crymble asked the defendant to be seated in the patrol car while the officer further investigated. The name given to the officer by the defendant was submitted to the patrol's communications system. There was no match found for that name. (See, Exhibit 3; Exhibit 102). Trooper Crymble then asked Mr. Ramirez–Cubillas if any of the occupants of his vehicle were legally in the United States. The defendant stated that none of them was legally present. Trooper Crymble, through dispatch, contacted the Immigration and Naturalization Service in North Platte. (See Exhibit 101).

Special Agent Michael Einspahr of the INS advised the patrol dispatcher that the INS would proceed to the traffic stop location and take the passengers from defen-

---

2. When the lights were activated, the trooper's camcorder was also activated. However, due to a malfunction in the antennae for the microphone equipment, there is no audio recording present on the videotape of this traffic stop. As a result, while the officer's physical actions can be observed on the tape, the recording does not provide evidence of the questions and dialogue between Trooper Crymble and the defendant. (See, Exhibit 2).

dant's vehicle into custody. Approximately 40–50 minutes later, at approximately 5:30 p.m. (M.S.T.), Special Agent Einspahr and INS Officer Flores arrived, removed the passengers from the defendant's vehicle, and seated them in the INS vehicle for transport to North Platte. The passengers were not asked about the circumstances of the traffic stop itself, but in an attempt to determine if Mr. Ramirez–Cubillas was involved in smuggling, the passengers were asked about the transportation he was providing them.

Special Agent Einspahr did not know if the defendant was deportable and questioned the defendant in the patrol car. No *Miranda* warnings were provided prior to this questioning. The defendant answered Agent Einspahr's questions, and stated that he was from Mexico and could produce no documents to show he was legally within the United States. At that point Special Agent Einspahr believed he had probable cause to believe the defendant was an illegal alien, and detained him along with the other vehicle occupants for further investigation by the INS.

After the defendant and passengers were transported to North Platte, the INS investigated their criminal and deportation histories. No history of criminal activity was found for any of the passengers. In accordance with INS policy, the vehicle passengers were detained until they could be transported to the Mexican border. Each chose to "voluntarily return" to Mexico and were transported to Mexico by the INS. (See, Exhibit 4)

The investigation of Mr. Ramirez–Cubillas' criminal and deportation history revealed that he had previously been deported. His fingerprints and photo were submitted through the IDENT computer, which is a system used to identify illegal aliens though computer access to fingerprints and photographs on file with the INS. The IDENT system revealed that the defendant had previously been in contact with INS, and the Central Index System was used to obtain his name, date of birth, classification, mother's and father's names and dates of birth, and his "A" number.

The defendant speaks Spanish. Special Agent Sidney Hooper verbally provided the *Miranda* warnings to the defendant in Spanish, and wrote the defendant's responses to these warnings in English on the INS affidavit and statement form. (See Exhibit 5). After the warnings were given, Mr. Ramirez–Cubillas agreed to provide the INS with a statement. Throughout this process he was cooperative, freely responded to the questions asked concerning his prior deportation and illegal re-entry, and did not request an attorney. The defendant's responses to the questioning were written in English. The questions and answers were read back to the defendant in Spanish, and once he verified that the answers were correctly recorded and true, the defendant signed the statement.

■■■ The defendant claims that any evidence arising from this traffic stop must be excluded. Under *Terry,* the issue of whether an investigatory detention or traffic stop complies with the Fourth Amendment depends upon two factors—whether the stop was justified at its inception, and whether the officer's actions during the stop were reasonably related in scope to the circumstances that justified the interference in the first place. *U.S. v. Navarrete–Barron,* 192 F.3d 786, 790 (8th Cir. 1999); *United States v. Ramos,* 42 F.3d 1160, 1163 (8th Cir.1994). An investigatory, or *Terry,* stop without a warrant is valid only if police officers have a reasonable and articulable suspicion that criminal activity may be afoot. When justifying a particular stop, police officers "must be able to point to specific and articulable

facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *U.S. v. Navarrete–Barron,* 192 F.3d at 790.

■ It is well established that any traffic violation, no matter how minor, provides a police officer with probable cause to stop the driver of the vehicle. *U.S. v. Alcantar,* 271 F.3d 731, 736 (8th Cir.2001). See also, *United States v. Neumann,* 183 F.3d 753, 755 (8th Cir.1999); *United States v. Caldwell,* 97 F.3d 1063, 1067 (8th Cir. 1996); *United States v. Pereira–Munoz,* 59 F.3d 788, 791 (8th Cir.1995). "Courts are not to consider the motive for a stop as long as the reason for the stop is valid." *United States v. Jones,* 275 F.3d 673, 680 (8th Cir.2001). Although a traffic stop cannot be pretextual, "so long as the officer is doing nothing more than he is legally permitted and objectively authorized to do, his actual state of mind is irrelevant for purposes of determining the lawfulness of the stop." *Alcantar,* 271 F.3d at 736. See also, *Whren v. United States,* 517 U.S. 806, 812, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Caldwell,* 97 F.3d at 1067; *United States v. Bell,* 86 F.3d 820, 822 (8th Cir.1996).

The defendant has claimed that there was no objective basis for the traffic stop which led to his arrest. He further claims that Trooper Crymble was following and watching him for thirty minutes prior to the stop, beginning on the west edge of Ogallala and continuing to the time of the traffic stop on the east edge of Ogallala. He claims that Trooper Crymble followed him for several miles, paralleled him for several miles, and finally overtook him at a high rate of speed. The defendant claims he continued to travel eastbound until he caught up with Trooper Crymble's patrol car which had decelerated. He claims he activated his blinker, properly passed the patrol car, and was immediately stopped for speeding. He further claims that if the passengers in the vehicle had not been deported, they could have testified concerning Trooper Crymble's conduct and the vehicle's speed prior to the stop, thereby proving that the traffic stop violated the Fourth Amendment and the case must be dismissed.

■ Trooper Crymble had probable cause to stop the defendant for speeding. Using calibrated equipment, he had determined that Mr. Ramirez–Cubillas was traveling in excess of the posted speed limit. This speeding violation was sufficient to justify stopping the vehicle. Although the defendant argues that Trooper Crymble had another motive for performing this stop, that argument is not supported by credible evidence. Mr. Ramirez–Cubillas description of being followed and watched for thirty minutes, all while traveling from the west edge to the east edge of Ogallala, Nebraska at a speed of at least 73 miles per hour, was not credible. Even if this evidence had been credible, this conduct by an officer is neither unlawful nor necessarily supportive of any claim that the officer's actions were racially motivated. Assuming evidentiary support existed, the troopers' ulterior motive was irrelevant since the traffic stop was justified and consistent with enforcing the state's motor vehicle laws. The defendant was traveling in excess of the posted speed limit and as such, the traffic stop was warranted.

The defendant claims that following the traffic stop, and when seated in Trooper Crymble's patrol car while tickets were being written, he was subjected to custodial interrogation in violation of his Miranda rights. The defendant claims that once Trooper Crymble had obtained his criminal history, drivers license, and vehicle registration information, he should have allowed the defendant to proceed. Mr. Ramirez–Cubillas argues that once the purpose of the stop had been satisfied, and

even though the defendant could not produce a driver's license or identification card, the trooper could not lawfully ask questions about whether the vehicle's occupants were legally in the United states without first providing Miranda warnings. (Defendant's brief at p. 5).

■■■ While the officer completes the routine but somewhat time-consuming task of checking vehicle, driver, warrant and criminal history, the officer may ask the motorist routine questions concerning the intended destination, the purpose of the trip, or whether the motorist will consent to a search of the vehicle, and the officer may act on whatever information is volunteered. *U.S. v. $404,905.00 in U.S. Currency,* 182 F.3d at 647. (See also, *United States. v. Ramos,* 42 F.3d at 1163; *United States v. Barahona,* 990 F.2d 412, 416 (8th Cir.1993); *United States v. Richards,* 967 F.2d 1189, 1192–93 (8th Cir.1992)). Based on observations and the defendant's answers to questioning, a trooper's suspicions may be sufficiently raised to justify expanding the scope of the stop and asking additional, more intrusive, questions. *U.S. v. Morgan,* 270 F.3d 625, 631–32 (8th Cir. 2001.)

■■ The passengers' attempts to avoid detection, the appearance of the vehicle and its ability to carry many passengers, and the appearance, behavior and statements of the driver and passengers, are among the many factors a law enforcement officer may consider in formulating reasonable suspicion that the vehicle is transporting illegal aliens. Considering the totality of the circumstances, the officer may possess sufficient facts justify stopping the vehicle or questioning the driver and passengers. *U.S. v. Brignoni–Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975). See also, *U.S. v. Rodriguez–Arreola,* 270 F.3d 611 (8th Cir. 2001) (where driver stated his passengers were not legally in the country, questioning passengers concerning their illegal presence in United States did not violate Fourth Amendment.); *U.S. v. Perez–Sosa,* 164 F.3d 1082, 1084 (8th Cir.1998) (probable cause sufficient to support arrest for transporting illegal aliens where van driver ignored trooper's activated lights, and when van stopped for refueling, trooper saw six to eight Hispanic men in rear of van, driver stated they are from Mexico, none of the passengers spoke English and none could produce documentation of being legally present in the United States); *U.S. v. Santana–Garcia,* 264 F.3d 1188 (10th Cir.2001) (no Fourth Amendment violation where driver at traffic stop had no license, was not registered vehicle owner, stated passengers were coming from Mexico and, in response to questioning, admitted they were not legal); *U.S. v. Lopez–Martinez,* 25 F.3d 1481, 1483 (10th Cir. 1994) (reasonable suspicion of illegal activity where van passenger peered through back window, stared at officer, and then sank back out of sight); *U.S. v. Garcia,* 732 F.2d 1221, 1225 (5th Cir.1984) (passengers' efforts to avoid detection by ducking and scrambling in vehicle was suspicious behavior); *U.S. v. Leyba,* 627 F.2d 1059, 1063 (10th Cir.1980) (officers unable to detect the presence of passengers in the rear seat, justifiably leading the agents to conclude the occupants were slouching down in order to avoid detection).

■■ When Trooper Crymble encountered the defendant at the traffic stop, Mr. Ramirez–Cubillas had no driver's license or identification, and the name he provided was not on the vehicle registration or in the patrol's computer database. The van was a large vehicle capable of seating and transporting many passengers. When Trooper Crymble was able to look into the van's side rear windows, he saw approximately ten passengers lying head to toe inside. Under such circumstances, the of-

ficer could reasonably suspect that the driver was not legally in the United States, that he was not legally driving the van, that he was transporting passengers who were lying rather than sitting in the van to avoid being seen, and that the passengers' illegal presence in the United States was the reason they were trying to remain undetected. The officer's aroused suspicions supplied a justifiable basis for asking the driver if any of the van passengers were legally in the United States. This brief questioning during the scope of the traffic stop was non-threatening, non-coercive, and not a custodial interrogation for the purposes of *Miranda. Berkemer v. McCarty*, 468 U.S. 420, 438, 104 S.Ct. 3138, 3149, 82 L.Ed.2d 317 (1984).

■ The trooper's detention of the driver and passengers while awaiting arrival of the INS also did not violate their Fourth Amendment rights. Federal immigration law, in conjunction with Nebraska state law, authorizes Nebraska state and local officials to detain persons when they reasonably suspect these detainees have committed, or are committing, the crime of illegal entry or illegal transport of aliens into the United States. *U.S. v. Villa–Velazquez*, 282 F.3d 553, 555 (2002). At the point in time when Trooper Crymble was detaining the defendant and the van occupants, he had been told by the defendant that the passengers were not legally in the United States. He had a reasonable basis for believing that a crime was being committed, and called the INS to further investigate. In less than an hour, the INS agents had arrived, and their further investigation of the defendant had revealed that he was also an illegal alien and had previously been deported. This detention and further investigation was supported by reasonable suspicion, was not unreasonably long, and was not an unlawful detention under the Fourth Amendment. *United States v. White*, 42 F.3d 457, 460 (8th Cir.1994) (finding delay of one hour and

twenty minutes for arrival of drug dog reasonable); *United States v. Bloomfield*, 40 F.3d 910, 917 (8th Cir.1994) (one hour wait from time of stop to arrest, part of which was waiting for a drug dog, was reasonable).

The evidence does not support defendant's claim that his Fourth and Fifth Amendment rights were violated by Trooper Crymble's stop of the vehicle, his subsequent questioning of the defendant, or his detention of the defendant and the passengers until the INS arrived to further investigate. There is no basis for suppressing evidence derived from this traffic stop.

The defendant also moves to dismiss the claim against him, and in support of this motion, argues that his Sixth Amendment right to compulsory process and his Fifth Amendment due process rights have been violated by the government's deportation of witnesses who could testify on his behalf. There is no merit to this claim.

■ To prevail on this claim, Mr. Ramirez–Cubillas has the burden of proving that the government has, in bad faith, deported witnesses that would have provided material and favorable testimony in his defense in ways that are not merely cumulative of the testimony provided by other available witnesses. *U.S. v. Nebraska Beef, Ltd.*, 194 F.Supp.2d 949, 957 (D.Neb.2002) (relying on *United States v. Valenzuela–Bernal*, 458 U.S. 858, 873–74, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)). The defendant can prove bad faith by either showing that the Government departed from normal deportation procedures or that it deported the aliens to gain an unfair tactical advantage over the defendant at trial. *Nebraska Beef, Ltd.*, 194 F.Supp.2d at 957 (citing *U.S. v. Pena–Gutierrez*, 222 F.3d 1080, 1085 (9th Cir. 2000)). "The proper focus is 'on the Government's knowledge when, exercising its

deportation authority, it arranged for the departure of the witnesses, not on any of its subsequent conduct.'" *Nebraska Beef, Ltd.,* 194 F.Supp.2d at 957 (quoting *U.S. v. Chaparro–Alcantara,* 226 F.3d 616, 624 (7th Cir.2000)).

■ The evidence establishes that the van passengers were deported in accordance with the INS' standard and customary procedures. There is no evidence that the deportations occurred with any intent or motive to deprive the defendant of exculpatory evidence at trial, and no evidence to support finding that, at the time the alien passengers returned to Mexico, the government was aware that they may have information relevant on the theories the defendant is currently pursuing.

Mr. Ramirez–Cubillas alleges that the deported passengers could testify in support of his motion to suppress. He argues that the passengers would provide testimony supporting his claim that he was not speeding just prior to the traffic stop, and that no reasonable suspicion existed to support the stop. He further states that these witnesses could have provided testimony concerning the trooper's conduct in passing and being passed by the defendant prior to the stop.

It is understandable that the government would not anticipate the need to retain the deportees to testify on these topics. The defendant does not argue that these witnesses could provide testimony to refute any of the allegations · brought against the defendant by the indictment, i.e., that having been previously deported, defendant was found in this country.

As previously discussed, if the defendant's vehicle was speeding, or if the officer had a reasonable basis to believe it was speeding, the officer's actions prior to the stop, and his motivation for making the stop, are irrelevant. Therefore, the sole issue on defendant's motion to suppress is whether the officer reasonably believed the vehicle was speeding. Ten of the passengers were lying down in the van prior to the stop, and from this position, it is highly unlikely that they could have seen the speedometer or could have independently assessed the vehicle's actual speed. Even if seated, they and the front seat passenger were not likely monitoring the speedometer. In addition, there is no evidence that the speedometer was accurate.

The defendant has failed to prove that the deported passengers have material and credible testimony to offer in support of defendant's motion to suppress. Even if they could offer testimony that no reasonable suspicion existed to justify stopping the defendant's van, the passenger's testimony would be cumulative of that already offered by the defendant.

The defendant has failed to establish that the government acted in bad faith in deporting the van passengers before the defendant could secure their testimony. He has also failed to present a plausible argument that these witnesses could offer material and favorable testimony on the motion to suppress. The alleged "loss of testimonial evidence" (filing 11) resulting from deporting the vehicle passengers did not violate defendant's compulsory and due process rights. There is no basis for dismissal of the indictment under the Fifth and Sixth Amendments.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, Chief United States District, pursuant to 28 U.S.C. § 636(b)(1)(B), that the defendant's "Motion to Suppress Items of Physical Evidence and Statements," filing 10, and "Motion to Dismiss Due to Loss of Material Evidence," filing 11, be denied in all respects.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to

appeal the district judge's adoption of this recommendation.

July 26, 2002.