# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4179

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Francis M. Summe, | * | [UNPUBLISHED] |
| | * | |
| Appellant. | * | |

_____

Submitted: April 17, 2006
Filed: May 30, 2006

_____

Before ARNOLD, FAGG, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

After obtaining information that Eric Thompson had robbed pharmacies to obtain Oxycontin, officers with the Kansas City police department's career criminal unit went to a hotel to arrest Thompson for violating his supervised release. The hotel manager confirmed that Thompson was checked in for the past two days and showed the officers paperwork with a copy of Thompson's photograph on an identification card. The manager stated Thompson was not there, but was expected back because he had reserved the room for another night. Police were not told and did not know anyone besides Thompson was checked into the room, although Francis M. Summe had paid for the cost of staying the third night. The officers set up surveillance and waited for Thompson's return. Later, Thompson arrived at the hotel in his car with

Summe. Summe got out of the car and started walking toward the hotel, while Thompson remained in the car. As one officer stopped Summe, another approached Thompson. The officers had drawn their weapons because Thompson had a lengthy criminal record, including a conviction for armed bank robbery. While some of the officers handcuffed and arrested Thompson, others handcuffed Summe for their protection until they determined his identity and whether he had any outstanding warrants. Summe identified himself and admitted he had an earlier drug conviction. The officers noticed Summe had been drinking, and called dispatch to confirm the information. In the meantime, the other officers searched Thompson incident to his arrest and found Oxycontin in his pants pockets. Some of the pills were in a bottle with the label peeled off. The officers confirmed that Summe had an earlier felony drug conviction, but there were no warrants for his arrest.

When informed of Thompson's arrest, the hotel manager stated she would not allow Summe to remain in the room and asked the officers to escort Summe off the property. The officers asked Thompson if Summe could take possession of his belongings because the hotel wanted them removed from the room. Thompson agreed, and stated the officers could go up to the room to remove his property. At the hotel manager's request, officers escorted Summe to the hotel room, and found two bags. Summe claimed ownership of one, a black duffle bag. Before handing the bags over to Summe, officers checked both bags to make sure they did not contain any weapons. Inside the black duffle bag, the officer found two pill bottles with the labels peeled off, containing 310 pills that appeared to be Oxycontin. The officers found 500 pills in the other bag. The officers then arrested Summe, and the Government charged him with conspiracy to distribute Oxycontin and possession with intent to distribute Oxycontin.

Summe filed a motion to suppress the drugs found in his bag, asserting police had no reason to detain him or search his luggage. The district court[*] denied Summe's motion, holding it was reasonable for the officers briefly to detain Summe to determine his identity, whether he was wanted for any earlier criminal activity, and whether he was armed. The court also held it was reasonable for the officers to check the luggage for guns and contraband before turning them over to Summe. After the denial of his motion, Summe conditionally pleaded guilty and was sentenced to 57 months in prison.

On appeal, Summe challenges the denial of his motion to suppress, arguing the scope of his detention violated the Fourth Amendment. We review de novo whether Summe's detention amounted to an arrest. United States v. Ruiz, 412 F.3d 871, 879 (8th Cir. 2005). "During an investigative stop, officers should 'employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose' of the temporary seizure." United States v. Maltais, 403 F.3d 550, 556 (8th Cir. 2005) (quoting United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999)). "The means used to effect the seizure must be objectively reasonable in light of the facts and circumstances confronting the officers." Id. Summe contests the manner of his detention–handcuffing him from the initial encounter through the search of the luggage. Under the circumstances, we do not believe Summe's handcuffed detention was objectively unreasonable. A police officer's use of handcuffs can be a reasonable precaution during an investigatory stop. See United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992). The officers had a legitimate concern that Thompson might be armed, see id., and did not know Summe's identity, whether he was a fugitive, or whether he was involved in illicit activity with Thompson. The district court found that only ten to fifteen minutes elapsed between Summe's initial detention and his arrest. We cannot say the mere fact that Summe

---

[*]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

remained handcuffed for five minutes after officers learned he was not a wanted fugitive converted the investigatory stop into an arrest. The officers did not know whether someone else was in the hotel room or whether there might be weapons there, and kept Summe cuffed for their safety until they could dispel their concerns. See United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) (reasonable for officers to suspect anyone involved in drug trafficking may be armed with a gun).

Summe also argues the search of the hotel room was unreasonable. We disagree. By the time of the search, the hotel manager had asked Summe to vacate the premises. The officers could reasonably believe the manager could eject Summe because the room had been used for an unlawful purpose. See Mo. Rev. Stat. § 315.075(3). Having been ejected from the room, Summe lacks standing to contest the officers' entry (search) into the room. United States v. Rambo, 789 F.2d 1289, 1295-96 (8th Cir. 1986); United States v. Allen, 106 F.3d 695, 699 (8th Cir. 1997). Further, the officers had Thompson's consent to enter the hotel room for collection of his belongings.

Summe last argues that even if the officers had authority to enter and search the hotel room, their search inside his black duffle bag violated the Fourth Amendment. See Rambo, 789 F.3d at 1296 (although evicted motel guest lacked standing to challenge search of motel room, standing to challenge search of locked luggage inside room "raise[d] a more difficult question"). "[W]hen a hotel guest's rental period has expired or been lawfully terminated, the guest does not have a legitimate expectation of privacy in the hotel room or in any articles therein of which the hotel lawfully takes possession." United States v. Rahme, 813 F.2d 31, 34 (2d Cir. 1987) (after hotel took possession of luggage left in room beyond rental period, law enforcement conducted inventory search); see United States v. Allen, 106 F.3d 695, 699 (6th Cir. 1997) (drugs in plain view inside room). If the hotel properly takes possession of a guest's luggage under state lien law, then the guest has no legitimate expectation of privacy in the luggage. Rahme, 813 F.3d at 34-35.

Although Thompson and Summe were not evicted for nonpayment rendering their bags seizable by the hotel under Missouri law, see Mo. Rev. Stat. § 419.060.1, we believe any legitimate expectation of privacy Summe had in the bag was outweighed by the officer's concern for their safety. Cf. United States v. Owens, 782 F.2d 146, 151 (10th Cir. 1986) (even if officers properly entered hotel room to perform a cursory investigation for dangerous cohorts, searching closed bag found inside closed drawer exceeded scope of protective sweep). The officers had just placed Thompson, a federal fugitive guilty of armed bank robbery, under lawful custodial arrest, and found a large quantity of suspected illegal pills in his possession. The officers could reasonably believe that Thompson was armed and dangerous, see New York v. Class, 475 U.S. 106, 117 (1986), and that the black duffle bag found in Thompson's room might belong to him and contain a weapon, despite Summe's claimed ownership of the bag. Given the substantial public concern for the safety of police officers lawfully carrying out enforcement efforts, we cannot say the officers acted unreasonably in making sure the bags did not contain weapons before turning them over to Summe, a previously convicted felon.

We thus affirm the district court.

_____