# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3147

_____

United States of America,

    Appellee,

  v.

Thomas E. Brooks,

    Appellant.

     * 
* 
* 
* Appeal from the United States
* District Court for the
* Western District of Missouri.
* 
* [UNPUBLISHED]
*

_____

Submitted: May 13, 2008
Filed: September 2, 2008

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

PER CURIAM.

  Thomas Brooks entered a conditional guilty plea to the charge of conspiracy to distribute fifty grams or more of a substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii) and 846, reserving his right to appeal the district court's[1] denial of his motion to suppress. We affirm.

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, who adopted the report and recommendation submitted by the Honorable James C. England, Chief Magistrate Judge for the United States District Court for the Western District of Missouri.

# I. Background

On the morning of June 23, 2005, a confidential informant who had previously provided reliable information contacted Officer David Holmes of the Republic, Missouri, police department and informed him that a man named "Ray" was coming that day to sell him methamphetamine at the Express Lane gas station in Republic. Among other things, the informant told Officer Holmes that Ray had an outstanding warrant for parole violations and described the vehicle that Ray would be driving. Holmes told the informant that surveillance would be established at the Express Lane and that the informant should arrange to travel with Ray to another location to complete the transaction. Officer Holmes then confirmed that an outstanding warrant existed for Raymond Schaffer's arrest.

Officer Michael Shook set up surveillance at the Express Lane station. At approximately 2:00 p.m., he observed a Toyota Camry (which was not the vehicle described by the informant) with three occupants park next to the informant's vehicle. One individual, later identified as Schaffer, approached the informant's vehicle while the other two, a man and a woman later identified as Brooks and Vonnie Young, looked around nervously as if performing counter-surveillance and proceeded to a nearby park. Schaffer spent approximately two minutes in the informant's vehicle, then walked over to Brooks and Young and conversed with them for about thirty seconds, then returned to speak with the informant for another thirty seconds. The three returned to the Camry and followed the informant's vehicle out of the parking lot. The informant called Holmes on his cell phone and told him that Schaffer was in the back seat of the Camry with four baggies of methamphetamine. Holmes and Shook followed the vehicles as they left the parking lot. After observing that it was following informant's vehicle too closely, Shook pulled the Camry over. Brooks was driving, Young was in the front passenger seat, and Schaffer was in the back. Shook approached the driver's side and Holmes the passenger side.

In response to Holmes's request for identification, Schaffer replied that he had none. When prompted, he said that his name was Raymond. At that point, Holmes observed what appeared to be a sword in a scabbard in the back seat and asked Schaffer to exit the vehicle. During a pat-down search, Officer Holmes saw a baggie of white crystalline powder sticking out of Schaffer's pants pocket. After pulling out three more baggies of powder, Holmes placed Schaffer under arrest.

As Officer Shook asked Brooks for his license and registration, he observed that Brooks appeared to be very nervous, with a shaky voice and trembling hands. Shook then saw a pocket knife in the center console of the Camry and asked Brooks and Young to exit the vehicle and be seated on the curb. After Young exited the Camry, the officers observed a baggie of white crystalline powder fall from her pant leg. Young was arrested, and a search of her person yielded sixteen baggies of methamphetamine and a pocket knife. A subsequent search of Brooks's person yielded two wallets, one of which contained approximately $1,500 in cash; a search of the Camry incident to arrest yielded, among other things, a .40 caliber firearm in the glove compartment, a sword on the floor of the back seat, and a pocket knife in the console. Brooks was detained for fifteen minutes or less prior to his arrest.

## II. Analysis

We review the district court's factual findings in support of its denial of a motion to suppress for clear error and its legal determinations *de novo*. United States v. Peralez, 526 F.3d 1115, 1119 (8th Cir. 2008).

Brooks argues that the officers lacked the requisite suspicion of criminal activity to stop his vehicle, contending that the officers' reason for the stop was pretextual. A vehicle stop constitutes a seizure and is thus subject to the reasonableness requirement of the Fourth Amendment. United States v. Wright, 512 F.3d 466, 471 (8th Cir. 2008) (citing Delaware v. Prouse, 440 U.S. 648, 653 (1979)

and <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996)). Officers are authorized to stop a vehicle containing a person for whom probable cause for arrest exists. <u>United States v. Cardenas-Celestino</u>, 510 F.3d 830, 833 (8th Cir. 2008) (citing <u>United States v. Sherrill</u>, 27 F.3d 344, 346-47 (8th Cir. 1994)). Likewise, it is reasonable for officers to stop a vehicle where they have probable cause to believe that a traffic violation has occurred. <u>Whren</u>, 517 U.S. at 810 (citing <u>Prouse</u>, 440 U.S. at 659 and <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 109 (1977) (per curiam)). Additionally, an officer may briefly detain an individual for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that the individual is involved in criminal activity. <u>United States v. Saenz</u>, 474 F.3d 1132, 1136 (8th Cir. 2007) (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 30 (1968)). "In determining whether reasonable suspicion exists, we consider the totality of the circumstances in light of the officers' experience and specialized training." <u>United States v. Davis</u>, 457 F.3d 817, 822 (8th Cir. 2006); <u>see</u> <u>Terry</u>, 392 U.S. at 30. We may also "rely on information provided by other officers as well as any information known to the team of officers conducting the investigation." <u>United States v. Navarrete-Barron</u>, 192 F.3d 786, 790 (8th Cir. 1999). The constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officers involved. <u>Whren</u>, 517 U.S. at 813.

The district court credited the officers' testimony that the vehicle Brooks was driving was following the vehicle in front of it too closely in violation of Missouri law. <u>See</u> <u>United States v. Lyton</u>, 161 F.3d 1168, 1170 (8th Cir. 1998); <u>United States v. Johnson</u>, 58 F.3d 356, 357 (8th Cir. 1995). In addition to the traffic violation justification for the stop, the officers had corroborated information from a reliable confidential informant that Schaffer, a passenger, was in possession of methamphetamine. Officer Holmes had confirmed that there was an outstanding warrant for Schaffer's arrest. The officers' observation of the interaction between the informant and Schaffer, Young, and Brooks was consistent with Officer Holmes's and informant's prearranged plan and, with the exception of the type of vehicle involved, corroborated the informant's information from earlier in the day. These facts, taken

together, establish that the officers had, at minimum, reasonable suspicion that at least one occupant of Brooks's vehicle was involved in criminal activity, and thus the stop of Brooks's vehicle was dually justified.

Brooks argues that the scope of the officers' investigation was unjustifiably expanded beyond what was necessary to complete the traffic violation stop. During a Terry stop, "an officer 'must . . . employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose' of the stop." United States v. Gill, 513 F.3d 836, 845 (8th Cir. 2008) (quoting Navarrete-Barron, 192 F.3d at 790); see Terry, 392 U.S. at 20 (detention must be "reasonably related in scope to the circumstances which justified the interference in the first place"). Officers can "check for weapons and may take any additional steps that are 'reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" Navarrete-Barron, 192 F.3d at 790 (quoting United States v. Hensley, 469 U.S. 221, 235 (1985)). In so doing, they may order the driver and passengers out of a vehicle and frisk them if there is a reasonable belief, supported by articulable facts, that they are armed and dangerous. Maryland v. Wilson, 519 U.S. 408, 415 (1997); Michigan v. Long, 463 U.S. 1032, 1047-48 (1983) (citing Mimms, 434 U.S. 106).

The scope of a traffic stop may be expanded if an officer develops a reasonable, articulable suspicion that further criminal activity is afoot. Peralez, 526 F.3d at 1120 (citing United States v. Sanchez, 417 F.3d 971, 975 (8th Cir. 2005)). At the time the Camry was stopped, the officers had at least reasonable suspicion that its occupants were currently involved in a drug transaction and that Schaffer possessed methamphetamine. Thus, they were justified in expanding the stop beyond the traffic violation to investigate those suspicions.

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a

citizen's personal security,'" which "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Mimms, 434 U.S. at 108-09 (quoting Terry, 392 U.S. at 19 and United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). "[M]inimally intrusive weapons searches" are likely to be reasonable because of the "inherent danger" of traffic stops and the diminished expectation of privacy in a vehicle. United States v. Shranklen, 315 F.3d 959, 962 (8th Cir. 2003) (internal quotations omitted). In this case, the officers observed a pocket knife and a sword scabbard in plain view inside the vehicle. Furthermore, the officers had at least reasonable suspicion that the Camry's occupants were involved in a drug transaction, and such transactions often involve weapons and violence. See Navarrete-Barron, 192 F.3d at 791; United States v. Brown, 913 F.2d 570, 572 (8th Cir. 1990). Thus, we conclude that the officers were justified in asking all of the Camry's occupants to exit the vehicle, in performing pat-down searches of all the occupants for weapons, and in maintaining the status quo by asking Brooks to remain seated on the curb while they completed their brief investigation.

The search of Brooks's person was justified as a search incident to a lawful arrest, which is valid "even if it is conducted before the actual arrest, provided that (1) the arrest and the search are substantially contemporaneous, and (2) probable cause to arrest existed before the search." United States v. Ilazi, 730 F.2d 1120, 1226 (8th Cir. 1984) (citing Rawlings v. Kentucky, 448 U.S. 98, 111 (1980)). By the time Brooks's person was searched, the officers had probable cause to believe that both Schaffer and Young possessed large quantities of methamphetamine and were involved in a drug transaction, and weapons had been seen in plain view in the vehicle, which was under Brooks's control. The officers also had probable cause to believe that Brooks, as the driver of a vehicle whose other occupants were currently involved in a drug transaction, was conspiring to distribute methamphetamine. See Maryland v. Pringle, 540 U.S. 366, 373 (2003) ("'[A] car passenger . . . will often be engaged in a common enterprise with the driver . . . .' [D]rug dealing [is] an enterprise to which a dealer would be unlikely to admit an innocent person with the

potential to furnish evidence against him." (quoting <u>Wyoming v. Houghton</u>, 526 U.S. 295, 304-05 (1999)).  Although the informant had identified only Schaffer as the seller, Brooks's earlier nervous counter-surveillance behavior, extreme nervousness when the Camry was pulled over, and Young's apparent involvement sufficiently dispelled any notion that Schaffer was acting alone.

The judgment is affirmed.

_____