# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3495

_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Edward Meier

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: October 18, 2018
Filed: January 16, 2019
[Unpublished]

_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Jonathan Edward Meier conditionally pleaded guilty to being a felon in possession of a firearm. He appeals the district court's[1] denial of his motion to

_____

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

suppress, arguing that officers unlawfully detained him and lacked reasonable suspicion to justify a pat-down search. We affirm.

## I. *Background*
### A. *Underlying Facts*

On the evening of February 14, 2016, Madisen Ebner called 911 requesting that an officer come to her home located in a trailer park in Fort Dodge, Iowa. Ebner complained that a man named "Jim" was harassing her. She reported that Jim was leaving the trailer park. She said that Jim drove a maroon minivan or sport utility vehicle.

Officer Jay Lukawski arrived at the trailer park at approximately 9:15 p.m. He spoke with Ebner. Ebner told him that a woman named "Sweeney" had accompanied Jim. Ebner showed Officer Lukawski a video taken from her home surveillance system showing Jim unplugging a surveillance camera located in the carport and then Jim and Sweeney walking to the door. Ebner asked Officer Lukawski to contact the two individuals and advise them to stop their harassment.

Officer Lukawski returned to his patrol car. He then talked with dispatch and received contact information for the alleged harassers. Thereafter, he backed out of Ebner's driveway and parked at the end of the street near the trailer park's entrance. A black Chevy truck drove past Officer Lukawski. Thinking the driver of the truck intended to turn around, Officer Lukawski moved his patrol car out of the entrance. Moments later, dispatch advised Officer Lukawski of Ebner's new 911 call. Ebner reported that Jim was back at her house, had a handgun, and was possibly damaging her home. Specifically, Ebner reported that the suspect was "bashing her shit in," referring to her home." *United States v. Meier*, No. 3:16-cr-03013, 2016 WL 6305954, at *1 n.1 (N.D. Iowa Oct. 26, 2016), report and recommendation adopted, No. 3:16-cr-03013, 2016 WL 7013475 (N.D. Iowa Nov. 30, 2016). The dispatcher reported to Officer Lukawski that a male was outside of Ebner's house trying to get

inside. The dispatcher then reported that the male was in a Chevy truck that was parked in Ebner's driveway.

When Officer Lukawski received the second call, he was only about a half block away from Ebner's trailer. He immediately returned to Ebner's trailer and parked behind the Chevy truck, which was black like the one he had observed earlier. Given the short distance, Lukawski did not activate his emergency lights. Consequently, his dash camera did not activate.

As Officer Lukawski arrived at the trailer, he saw Meier beginning to exit the driver's side of the truck. In addition to resembling the truck that Officer Lukawski saw earlier, the truck also matched dispatch's information of a Chevy truck at Ebner's residence. Officer Lukawski approached Meier, unsnapping his holster and placing his hand on his weapon. He kept the weapon holstered. He identified himself to Meier and explained that he was responding to a call involving a gun. Officer Lukawski instructed Meier to keep his hands where he could see them. Meier complied. Officer Lukawski asked Meier if he had any weapons on him. Meier responded no. Officer Lukawski then moved to get a better view of the inside of the truck through the door that remained open. Officer Lukawski asked Meier if he had any weapons inside the truck. As Officer Lukawski attempted to look in the truck, Meier responded by "reach[ing] over with his right hand and push[ing] the door shut." Tr. of Suppression Hr'g at 15, *United States v. Meier*, No. 3:16-cr-03013 (N.D. Iowa Oct. 19, 2016), ECF No. 33. Meier stated that the truck did not belong to him and that he did not want the officer to look in it. Meier never answered whether there were weapons inside the truck. Officer Lukawski testified that Meier shutting the truck door in response to a question about weapons "was a sign that something here is not right." *Id.* at 16.

Officer Lukawski requested Meier's identification, and Meier provided the officer his driver's license. Officer Lukawski used his portable radio to ask dispatch

-3-

to run Meier's driver's license, as well as the license plate on the truck. This process took about three to four minutes. At about 9:34:19 p.m., dispatch advised Officer Lukawski that Meier's name was "Jonathan Meier" and that the truck was a black Chevy Colorado truck registered to another individual. Dispatch said nothing to make Meier's possession of the truck appear unlawful.

Officer Lukawski testified that his conversation with Meier throughout their short exchange was calm. Back-up arrived within five minutes. During that time, in addition to advising Meier he was there for a gun call, Officer Lukawski also told Meier that he had been at the residence earlier responding to a call alleging harassment. At this point, Officer Lukawksi determined that the first call was not connected to the second call regarding a gun. Officer Lukawski explained, "[B]efore I got there I thought it might have been related. But then I . . . knew the female from the harassment from earlier. So . . . once I got there, [I] realized that it probably wasn't the two of them." *Id.* at 19. Officer Lukawski further explained that even though he realized that Meier was not the person from the first call, he questioned Meier because "it was still a gun call"; there was still "a call that somebody was at the residence with a firearm." *Id.* Meier asked Officer Lukawski, "Well, if I'm not the guy you're looking for, can I just leave?" *Id.* at 44. Officer Lukawski responded that he "was going to wait for [his] back-up to show up and then [they] were going to check with [Ebner] and . . . if everything was fine, he'd be on his way." *Id.* at 45.

Officer Lukawski did not conduct a protective pat-down search of Meier while waiting for back-up due to "officer safety" reasons. *Id.* at 20. Officer Lukawski stated that Meier was "calm," and Officer Lukawski "knew Officer [Matthew] Burns was only a few minutes away, so [he] thought there was no sense in having this situation potentially get escalated by [himself] when [his] back-up was only another minute or two away." *Id.*

Also, Officer Lukawski testified that, during this time, he did not speak with Ebner to confirm that Meier was the actual subject of her call prior to Officer Burns's arrival for two reasons. First, Ebner did not come out of the trailer. And second, Officer Lukawski thought it unwise to leave Meier alone under the circumstances. There was no door or window in the trailer that would have allowed Ebner to see the location where Officer Lukawski and Meier were standing during their interaction. For Ebner to see Meier, she would have had to exit the trailer and come around the corner of the trailer. Officer Lukawski testified that he preferred that Ebner remain in the trailer for her safety.

Officer Burns arrived at the scene shortly after Officer Lukawski completed the driver's license and vehicle check. Specifically, Officer Burns arrived at 9:35:45 p.m., a little more than four minutes after Officer Lukawski first made contact with Meier. Officer Burns had learned from dispatch that the 911 call was for a man outside a trailer with a gun and that Officer Lukawski was on scene investigating. According to Officer Burns, "a man with a gun call's obviously a two-man call." *Id.* at 54. Upon his arrival to the scene, Officer Burns first asked Officer Lukawski if he had "pat[ted] [Meier] down or anything." *Meier*, 2016 WL 6305954, at \*3 (first alteration in original) (quoting Ex. B at 9:35:45). Officer Lukawski responded that he had not, but he indicated that Meier "didn't appear to have anything on him." *Id.* (quoting Ex. B at 9:35:55). By that statement, Officer Lukawski did not mean that he "had concluded that [Meier] was unarmed." Tr. of Suppression Hr'g at 24. Officer Lukawski testified that he was just "advis[ing] [Officer Burns] that Mr. Meier[] had told [him] that [Meier] didn't have anything on him." The encounter occurred at night. Meier wore jeans and "a red hooded sweatshirt . . . with the pouch-type deal in the front." *Id.*

With Officer Burns present, Officer Lukawski again asked Meier for his driver's license and told Meier he was going to talk to Ebner. Meier complied and requested permission to leave. Officer Burns advised Meier that he was going to pat him down. Meier's demeanor then changed. He became nervous. "He stated that he

had anxiety and that the last time that he dealt with the police that they beat him up." *Id.* at 25. Officer Burns replied that the officers were not going to beat him. To help calm him, they advised him that Officer Burns's dash camera was recording both audio and video of the encounter.

Given the nature of the 911 call, the officers persisted in wanting to pat Meier down regardless of Meier's expressed anxiety and visible nervousness. Officer Burns asked Meier to turn around so that he could pat Meier down. Officer Burns asked Meier whether he had any weapons on him, and Meier responded that he had a pocket knife and offered to retrieve it. Officer Burns told Meier to keep his hands out of his pockets. He asked Meier if he had any weapons besides the knife. Meier did not respond. Meier, visibly agitated, began moving away from the truck and toward a carport. Officer Burns again asked Meier to cooperate and turn around so he could pat Meier down. Meier failed to comply. Officer Burns then grabbed Meier by the arm to turn him around. When Meier resisted, Officer Burns took Meier to the ground. Meier landed face down on the ground. His hands were beneath his body. Meier did not comply with the officers' commands to bring his arms behind his back. He also resisted their attempts to bring his arms from beneath his body. Officer Burns warned Meier several times that he would use his taser on Meier if he failed to cooperate. The officers eventually secured Meier's arms and handcuffed him without using the taser. They then rolled Meier over and sat him up. On the ground, they saw a small revolver that had fallen out of the pouch of Meier's hooded sweatshirt. The gun was "underneath where [Meier] had been laying." *Id.* at 30. Next to the gun, the officers also observed a digital scale.

After securing Meier, the officers arrested him on account of his resistance. The officers then searched Meier incident to arrest. They found a substance containing THC, among other items. Officers then looked into the truck through the passenger window and saw a handgun in plain view on the floor in the front of the driver's seat. Officers seized the handgun. They then applied for a search warrant for

the truck. They executed the search warrant and seized other incriminating evidence from the truck.

## B. *Procedural History*

Meier was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Meier moved to suppress the evidence seized. He argued that Officer Lukawski's initial seizure of Meier may have been justified by reasonable suspicion based on the 911 call. But, Meier asserted, that suspicion did not survive Officer Lukawski's determination that Meier was not the harassment suspect from the first 911 call and did not appear to be armed.

Following a suppression hearing, the magistrate judge recommended that the district court deny Meier's motion to suppress. The magistrate judge first found "that Officer Lukawski conducted a proper *Terry*[2] stop and his continued detention of [Meier] until a backup officer arrived was reasonable." *Meier*, 2016 WL 6305954, at *5 (italics added). Specifically, the magistrate judge found that Officer Lukawski had a reasonable suspicion to stop Meier and detain him to investigate whether Meier was the man that Ebner saw with a gun outside her trailer. The magistrate judge found irrelevant Officer Lukawski's conclusion that Meier "was not one of the people who had been harassing Ebner earlier that night." *Id.* This was "because Officer Lukawski had the facts supporting a reasonable suspicion that [Meier] was involved in criminal conduct and may be armed" based on the second 911 call. *Id.* The magistrate judge noted the short period of time that elapsed between when Officer Lukawski first made contact with Meier and when Officer Burns arrived and conducted the pat-down search. During that time, the magistrate judge found, nothing "dissipated the grounds for reasonable suspicion that [Meier] was the man Ebner saw outside her trailer with a handgun." *Id.* at *6.

---

[2]*Terry v. Ohio*, 392 U.S. 1 (1968).

Next, the magistrate judge found "that Officer Burns did not violate the Fourth Amendment when he conducted a pat[-]down search of [Meier]." *Id.* Specifically, the magistrate judge determined that "reasonable suspicion existed that [Meier] was the armed man Ebner" referenced and "nothing dissipated the basis for a reasonable officer to believe that [Meier] was the armed man Ebner had seen outside her trailer." *Id.* The magistrate judge also found credible Officer Lukawski's testimony "that although he did not see anything on [Meier] that made him look[] armed, [Meier] was wearing loose clothing such that visual inspection did not dispel his reasonable suspicion that [Meier] was armed." *Id.*

As a result, the magistrate judge found "that the officers conducted a lawful *Terry* stop and protective pat[-]down search of [Meier]. It follows, therefore, that the officers lawfully recovered the evidence they discovered as a result of conducting the stop and pat[-]down search." *Id.* at \*7 (italics added).

The district court accepted the magistrate judge's report and recommendation to deny Meier's motion to suppress. First, the district court accepted the magistrate judge's conclusion that Officer Lukawksi had a reasonable suspicion to continue detaining Meier after concluding he was not "Jim" from the first 911 call. The court concluded that "[i]t was reasonable for Lukawski to continue investigating until he verified whether Meier was the individual with the firearm." *United States v. Meier*, No. 3:16-cr-03013, 2016 WL 7013475, at \*7 (N.D. Iowa Nov. 30, 2016). The court also found "it . . . reasonable for Lukawski to wait for Burns before continuing his investigation" because Officer Lukawski testified "that a firearm investigation or 'gun call' required the presence of two officers for officer safety" and "[t]he continued detention was minimal and reasonable under the circumstances" given Officer Burns's short distance away from the scene. *Id.* at \*8.

Second, the district court accepted the magistrate judge's conclusion that the officers had a reasonable suspicion to believe that Meier was armed and dangerous

to justify the pat-down search. The district court credited Officer Lukawski's testimony that his statement "that Meier didn't 'appear to have anything on him'" "did not mean he had concluded Meier was unarmed." *Id.* at *8. Furthermore, the district court found "that Burns had reasonable suspicion to believe that Meier was armed to justify the pat-down search." *Id.* at *9. The court based this finding on the following facts: Officer Burns was responding to a gun call; Meier was wearing clothes that could conceal a firearm and had not yet been patted down; and no circumstances existed suggesting that the caller was mistaken in seeing a firearm or that Meier was not the person the caller saw with the firearm.

## II. *Discussion*

Meier appeals the district court's denial of his motion to suppress. Specifically, he argues that the district court (1) clearly erred in adopting certain factual findings of the magistrate judge, and (2) legally erred in denying his motion to suppress based on the dissipation of reasonable suspicion.

"We review *de novo* the district court's denial of a motion to suppress evidence and 'the factual determinations underlying the district court's decision for clear error.'" *United States v. Parks*, 902 F.3d 805, 812 (8th Cir. 2018) (quoting *United States v. Harris*, 747 F.3d 1013, 1016 (8th Cir. 2014)). "The district court's choice between two permissible views of the evidence cannot be considered clearly erroneous . . . ." *United States v. Cobo-Cobo*, 873 F.3d 613, 616 (8th Cir. 2017), *cert. denied*, 139 S. Ct. 57 (2018).

## A. *Factual Findings*

Meier challenges three of the magistrate judge's factual findings, which the district court adopted.

1. *Meier's Failure to Answer Whether a Weapon was Inside the Truck*

First, Meier challenges the magistrate judge's finding that Officer Lukawski credibly testified that Meier's "action in shutting the truck door in response to a question about weapons made Officer Lukawski feel that something was not right." *Meier*, 2016 WL 6305954, at *2. Relatedly, Meier challenges the magistrate judge's finding that "[a] reasonable officer could conclude from [Meier's] failure to answer the question and suspicious conduct in shutting the door to the truck that a weapon was inside the truck." *Id.* at *5. Meier argues that Officer Lukawski's testimony is not credible because (1) prior to the suppression hearing, Officer Lukawski never claimed that Meier's actions made him feel that "something was not right," and (2) Officer Lukawski's testimony is inconsistent with his actions that evening, including having a calm conversation with Meier and determining that Meier was not the harassment suspect from the first 911 call. Even crediting Officer Lukawski's testimony, Meier contends that Officer Lukawski's feeling that "something was not right" was objectively unreasonable because Meier truthfully disclosed that the truck was not his. Meier asserts that it is "neither unreasonable, nor unlawful, for [him] to refuse to answer a question or permit a search of the truck." Appellant's Br. at 12.

Here, the magistrate judge found Officer Lukawski credible, and the district court adopted this finding. "A credibility determination made by a district court after a hearing on the merits of a motion to suppress is 'virtually unassailable on appeal.'" *United States v. Frencher*, 503 F.3d 701, 701 (8th Cir. 2007) (quoting *United States v. Guel-Contreras*, 468 F.3d 517, 521 (8th Cir. 2006)). We agree with the district court that none of the arguments that Meier advances "demonstrate that [Officer] Lukawski's testimony was not credible." *Meier*, 2016 WL 7013475, at *4. First, as the district court explained, "Just because [Officer] Lukawski did not mention his suspicions in his report or deposition, does not mean they did not exist." *Id.*

Second, the totality of the circumstances shows that Officer Lukawski was justified in being suspicious of Meier shutting the truck door in response to a question

-10-

about weapons. It is undisputed that within five minutes of the first 911 call, Officer Lukawski was alerted to another 911 call by Ebner. Ebner reported that "Jim" was back at her house, had a handgun, and was attempting to break into her house or doing something to her home. Ebner told the dispatcher (who passed the information along to Officer Lukawski) that the man had parked his Chevy truck in her driveway. Ebner stated that she saw the man with a small handgun in his hand as he approached her trailer. Ebner asked the dispatcher to send Officer Lukawski back to her residence quickly. It is also undisputed that Officer Lukawski arrived at the scene for a second time within one minute of that call and found Meier getting out of a Chevy truck—the same make of truck that Ebner had reported in her second 911 call. Meier does not dispute telling Officer Lukawski that he had thrown a snowball at Ebner's trailer to get her attention; this is consistent with Ebner's complaint that the individual driving the Chevy truck had done something to her home. Officer Lukawski reasonably concluded that Meier might also have a weapon in the truck, as Ebner had reported. Meier's behavior after being asked about whether there were weapons in the truck supported reasonable suspicion. Meier responded by gently shutting the truck door. Rather than answering the question directly, Meier proceeded to deny ownership of the truck and deny the officer permission to look into it. On this record, it was not clearly erroneous for the magistrate judge to credit Officer Lukawski's testimony that Meier shutting the door in response to a question about weapons made him feel that "something was not right."

## 2. *Pat-Down Search and Seizure*

Next, Meier challenges the magistrate judge's finding that "Officer Lukawski decided not to conduct a pat[-]down search of [Meier] . . . because he knew he had a backup officer on the way and the situation was currently stable. He testified that he decided to wait to conduct a pat[-]down [search] until the backup officer arrived for officer safety reasons." *Meier*, 2016 WL 6305954, at *2. Meier maintains that this finding is contrary to Officer Lukawski's deposition testimony and actions the night of the arrest. According to Meier, Officer Lukawksi's deposition testimony shows

-11-

that "Officer Lukawski performed the pat[-]down [search] as an afterthought—not that he intended to await backup in order to conduct the pat[-]down search until Officer Burns arrived, and not because it was due to any conduct or suspicion that he had of Mr. Meier." Appellant's Br. at 13. Meier points to Officer Lukawski's decision to not pat him down prior to Officer Burns's arrival as proof that Officer Lukawksi felt no threat to officer safety. Meier emphasizes Officer Lukawski's statement to Officer Burns that Meier "didn't appear to have anything on him." *Meier*, 2016 WL 6305954, at *3 (quoting Ex. B at 9:35:55). Meier argues that "[i]f Officer Lukawski truly believed that Mr. Meier might be armed, he would not have told Officer Burns that Mr. Meier did not appear to be armed, and would not have engaged in a calm, pleasant conversation with an armed criminal suspect without taking any measures to protect himself." Appellant's Br. at 14–15.

Meier overlooks that it was Officer Burns—not Officer Lukawski—who conducted the pat-down search. As a result, we agree with the district court that Officer "Lukawski's subjective reasons for failing to pat down Meier are not material to the issue of whether the pat-down search by [Officer] Burns was reasonable." *Meier*, 2016 WL 7013475, at *5 (citing *United States v. Hanlon*, 401 F.3d 926, 929 (8th Cir. 2005) (stating the relevant inquiry is whether "a hypothetical officer in exactly the same circumstances reasonably could believe that the individual is armed and dangerous")).

### 3. *Subject of the 911 Calls*

Finally, Meier challenges the magistrate judge's finding "[t]hat Officer Lukawski was able to determine that Ebner was mistaken and [Meier] was not one of the harassment suspects did not mean that Officer Lukawski had concluded that [Meier] was not the suspect of the second 911 call." *Meier*, 2016 WL 6305954, at *2 n.2. Meier argues that the overwhelming evidence shows "that Officer Lukawski concluded that Mr. Meier was not 'Jim,' and that Jim was the harassment suspect and the subject of both 911 calls." Appellant's Br. at 16. Meier points out that on the first

911 call, Ebner identified Jim and Sweeney as the harassers; on the second 911 call, when asked who had a gun, Ebner replied, "that Jim that stalks me." *Id.* (quoting Ex. A-2). Meier asserts that Ebner identified Jim as the subject of both 911 calls; this information was then relayed to Officer Lukawski. Meier notes that Officer Lukawski expressly told Meier that he was not the person that he was looking for and that as soon as backup arrived, he would speak to Ebner and "get him on his way." *Id.* at 17 (quoting Ex. C-1 at 1).

We conclude that this factual finding was not clearly erroneous. It was reasonable for Officer Lukawski to suspect Meier was the person with a firearm based on the second 911 call. "There were two 911 calls. The first 911 call involved harassment suspects. The second 911 call involved a man with a gun outside Ebner's home, whom she thought was one of the original harassment suspects." *Meier*, 2016 WL 6305954, at *2 n.2. The second 911 call gave identifying information to Officer Lukawski about the suspect, whom Ebner believed to be "Jim": (1) he drove a Chevy truck, (2) he had done something to Ebner's home, and (3) he had a gun. Meier argues Officer Lukawski was obligated to cease further investigation once he determined that Meier was not "Jim," as Ebner reported in the second 911 call. We disagree. Officer Lukawski still had two other pieces of identifying information from the second 911 call that Officer Lukawski confirmed: (1) Meier drove a Chevy truck, and (2) he admitted to throwing a snowball at Ebner's home. Also, even though Officer Lukawski did not believe Meier was Jim, it did not mean that Meier could not be the armed person for which the second call was made. The situation thus remained insecure. It was, therefore, "fair to say that Meier was the 'subject' of the second 911 call even though he was not the harassment suspect from the first call." *Meier*, 2016 WL 7013475, at *5.

## B. *Reasonable Suspicion*

Meier also argues that the district court erred in denying his motion to suppress because (1) Meier was seized when Officer Lukawski approached him, and (2) any

reasonable suspicion justifying that seizure dissipated when Officer Lukawski concluded Meier was not the harassment suspect from the first 911 call and did not appear to be armed.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons . . . that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). "[A]n officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

We "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Id.* (quoting *Cortez*, 449 U.S. at 418). "Factors that may reasonably lead an experienced officer to investigate include time of day or night, location of the suspect parties, and the parties' behavior when they become aware of the officer's presence." *United States v. Dawdy*, 46 F.3d 1427, 1429 (8th Cir. 1995). "In addition, a person's temporal and geographic proximity to a crime scene, combined with a matching description of the suspect, can support a finding of reasonable suspicion." *United States v. Quinn*, 812 F.3d 694, 698 (8th Cir. 2016). "In deciding whether the requisite degree of suspicion exists, we view the [officers'] observations as a whole, rather than as discrete and disconnected occurrences." *United States v. Poitier*, 818 F.2d 679, 683 (8th Cir. 1987).

"During an investigative stop, officers should 'employ the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose' of the temporary seizure." *United States v. Maltais*, 403 F.3d 550, 556 (8th Cir. 2005) (quoting *United States v. Navarrete-Barron*, 192 F.3d 786, 790 (8th Cir. 1999)). In executing an investigatory stop, officers are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley*, 469 U.S. 221, 235 (1985). "To establish an unreasonably prolonged detention, the defendant must show that the officer detained him beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion." *United States v. Donnelly*, 475 F.3d 946, 951–52 (8th Cir. 2007).

Here, the government does not dispute Meier's contention that he was seized within the meaning of the Fourth Amendment. The question, therefore, is whether the continued seizure of Meier was reasonable once Officer Lukawski concluded that Meier was not "Jim"—the harassment suspect from the first 911 call—and "didn't appear to have anything on him." *Meier*, 2016 WL 6305954, at *3 (quoting Ex. B at 9:35:55).

Based on the totality of the circumstances, we conclude that Officer Lukawski had reasonable suspicion for his continued investigation of Meier. First, we reject Meier's argument that Officer Lukawski lacked reasonable suspicion to continue Meier's detention once he determined that Meier was not "Jim" from the first 911 call. As we previously explained, Officer Lukawski could reasonably conclude that, despite not being "Jim," Meier was the subject of the second 911 call who was suspected of possessing a firearm. *See supra* Part II.A.3.

Second, we reject Meier's argument that Officer Lukawski lacked reasonable suspicion to continue Meier's detention based on his alleged admission to Officer

-15-

Burns that he did not conduct a pat-down search of Meier because Meier "didn't appear to have anything on him." *Meier*, 2016 WL 6305954, at *3 (quoting Ex. B at 9:35:55). Based on the totality of the circumstances, it was reasonable for Officer Lukawski to continue investigating Meier until he verified whether Meier was the individual with the firearm, as described in the second 911 call. Officer Lukawski responded to the second 911 call about a man outside of Ebner's residence with a gun who had parked his Chevy truck in the driveway. Officer Lukawski's statement that Meier "didn't appear to have anything on him,"*Meier*, 2016 WL 6305954, at *3 (quoting Ex. B at 9:35:55), does not detract from the totality of circumstances giving rise to a reasonable suspicion justifying Meier's continued seizure. This is especially true considering Meier was wearing loose clothing, including a hooded sweatshirt which could potentially conceal a firearm.[3]

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

[3]Meier has not challenged whether Officer Burns had reasonable suspicion to believe that Meier was armed and dangerous to justify the pat-down search of Meier, as opposed to the officers' continued seizure of Meier.