**UNITED STATES of America, Appellee,**

v.

**Charles W. RICHARDS, Appellant.**

**No. 91–3617.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1992.

Decided June 22, 1992.

R. Steven Brown, Federal Public Defender, Springfield, Mo. (argued), for appellant.

Richard E. Monroe, Asst. U.S. Atty., Springfield, Mo. (argued), for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and EISELE,[*] Senior District Judge.

BOWMAN, Circuit Judge.

Charles W. Richards was indicted on one count of knowingly transporting, or causing to be transported, firearms in interstate commerce in violation of 18 U.S.C. § 922(g)(1) (1988), he previously having been convicted of three or more felonies classified as violent felonies by 18 U.S.C. § 924(e)(2)(B) (1988). After a plea of not guilty, Richards was tried before a jury in the District Court[1] and found guilty. The court sentenced him to 240 months in prison to be followed by three years of supervised release.

Richards appeals only his conviction. He argues that the District Court erred in (1) denying his motion to suppress evidence seized during a search of his automobile, (2) admitting certain evidence over his objection that it was inadmissible as evidence of prior bad acts, (3) excluding certain testimony proffered by him under Rule 804(b)(3) of the Federal Rules of Evidence, (4) denying his motion for judgment of acquittal based on the insufficiency of the government's evidence, and (5) denying his motion for a new trial based on newly discovered evidence. We affirm the conviction.

## I.

Richards and a female passenger, Rachel Harp, were stopped by a Missouri highway patrolman in Greene County, Missouri, in February 1991. Richards and Harp were on their way from Arizona to Illinois. The patrolman, who had been traveling in the opposite direction, observed Richards make an erratic driving maneuver that the patrolman considered a traffic violation. The officer reversed his direction, pursued Richards and, in doing so, observed Richards run off the road onto the shoulder. This second maneuver led the patrolman to believe Richards may have been drinking. The patrolman then signaled Richards to stop and Richards pulled his car off the road.

Richards identified himself to the patrolman and accompanied him to the officer's car while a check was run on his license and registration. Harp remained in Richards' vehicle, apparently asleep. While in the patrol car, the officer noted that Richards was unusually nervous. When asked why, Richards responded that he recently had been released from an Illinois penitentiary where he had been serving time for burglary.

The officer then asked for Richards' consent to a search of his car, which Richards refused. Additional officers were called to the scene and one of the officers went to Richards' car to ask Harp to step outside. In doing so, the officer noticed a box of .22 caliber shells sitting on the console inside Richards' car. After seeing the shells, the

---

[*] The HONORABLE GARNETT THOMAS EISELE, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

officers searched the passenger compartment looking for weapons. They discovered several burn holes in the carpet on the driver's side of the compartment and a small amount of marijuana. At this point, Richards and Harp were placed under arrest for possession of marijuana.

The patrolmen searched Harp's purse incident to her arrest and discovered a loaded handgun. Richards was searched incident to his arrest and the patrolmen discovered a slip of paper listing various pharmaceutical drugs. The patrolmen then searched the trunk of Richards' car and discovered pharmaceutical drugs (in their original boxes) matching the list from Richards' pocket, burglary tools, and a black nylon bag containing three baggies of marijuana, drug paraphernalia, two more loaded handguns, and additional ammunition. Because Richards and Harp were under arrest, and because the vehicle potentially was subject to forfeiture, the car was towed to the highway patrol headquarters where its contents were inventoried.

In due course, Richards was indicted, tried, found guilty, and sentenced, as set forth at the beginning of this opinion. We now consider the issues he raises in this direct appeal of his conviction.

## II.

■ Richards first argues that the District Court erred in denying his motion to suppress the evidence seized during the warrantless search of his automobile.

In reviewing the district court's determination on a motion to suppress, we will affirm unless we find the decision "lacks the support of substantial evidence, it evolves from an erroneous view of the applicable law, or upon considering the entire record we are left with a definite and firm conviction that a mistake has been made."

*United States v. Pantazis*, 816 F.2d 361, 363 (8th Cir.1987) (quoting *United States v. Lewis*, 738 F.2d 916, 920 (8th Cir.1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985)).

Richards contends his motion to suppress should have been granted because the ini-

tial stop of his automobile for a traffic violation was pretextual, and therefore the ensuing search was unconstitutional. Pretextual stops are unreasonable under the fourth amendment. *United States v. Woodall*, 938 F.2d 834, 836 (8th Cir.1991). Evidence obtained as a result of a pretextual stop therefore is subject to suppression. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961). This Court also has held, however, that whether a particular stop was pretextual is a question of fact. *United States v. Portwood*, 857 F.2d 1221, 1223 (8th Cir.1988), *cert. denied*, 490 U.S. 1069, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989). "We will not disturb the district court's finding that this search was not pretextual unless it is clearly erroneous." *Id.* This determination is to be made under a " 'standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.' " *United States v. Cummins*, 920 F.2d 498, 501 (8th Cir.1990) (quoting *Scott v. United States*, 436 U.S. 128, 138, 98 S.Ct. 1717, 1723, 56 L.Ed.2d 168 (1978)), *cert. denied*, —— U.S. ——, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991).

Having considered the evidence presented at the suppression hearing in this case, we are satisfied the District Court's finding that the stop was not pretextual is not clearly erroneous. The patrolman testified that he observed Richards' vehicle make a swerving lane change, cutting off another vehicle entering the divided highway. The officer turned his patrol car around, followed Richards, and observed him drift momentarily off the road and onto the right shoulder. These actions, the officer believed, constituted a traffic violation and suggested that the driver may have been drinking. Accordingly, the patrolman signaled Richards to stop. "When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle." *Cummins*, 920 F.2d at 500.

■ Richards further contends that, even if the stop was constitutionally permissible, the evidence must be suppressed because the ensuing search of his car was

unreasonable. We disagree. The officer asked Richards for his license and registration and asked him to accompany the officer to the patrol car. These requests were reasonably related to a stop for a traffic violation. *Cf. id.* at 502 (officer's questioning of suspect as to why he committed a traffic violation is reasonably related to the purpose of the stop). The officer then learned that Richards was a recently released felon and noted that he appeared to be extraordinarily nervous. An officer returned to Richards' vehicle and asked Harp to get out. In doing so, the officer noticed the .22 cartridges sitting in plain view in the passenger compartment. He then made a limited sweep of the passenger compartment and discovered the marijuana. This limited search is permissible during a road-side stop, *Michigan v. Long,* 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983), even though the occupants have been removed from the vehicle prior to the search. *Cummins,* 920 F.2d at 502.

■ The evidence recovered by this initial search gave sufficient probable cause to arrest Richards and Harp. They were searched incident to their arrest, and the gun in Harp's purse was discovered. The trunk of Richards' car also was searched for drugs and weapons. This search was justified as either incident to their arrest, *Cummins,* 920 F.2d at 502 (citing *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973)), or as an inventory search. *Id.* (citing *Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)).

We are persuaded the District Court's factual findings are not clearly erroneous and the law was correctly applied. We therefore conclude that the District Court did not err in denying Richards' motion to suppress.

### III.

■ Richards argues the District Court committed reversible error by allowing the admission of evidence of the burglary tools, marijuana, drug paraphernalia, and stolen pharmaceutical drugs recovered from the trunk of his car. Richards objected to this evidence as evidence of prior bad acts and asserted that it was inadmissible under Rule 404(b) of the Federal Rules of Evidence.[2] The government responded that the evidence was relevant to show Richards' knowledge of, and dominion and control over, the firearms found in the trunk of his car. It was, and is, Richards' contention that he did not know that any of the three guns (one in Harp's purse and two in the trunk) were present and, therefore, he cannot be guilty of transporting them. By linking Richards to the other contents of the trunk, the government sought to raise the inference that he also knew of the handguns found there.

Where, as in this case, "it is made clear at the outset of the trial that the defendant's principal defense is a lack of knowledge or intent ... the government may take the defendant at his word and introduce the evidence in its case-in-chief." *United States v. Estabrook,* 774 F.2d 284, 289 (8th Cir.1985). Here, we are convinced that the District Court did not exceed its discretion in admitting the disputed evidence. The evidence was clearly relevant to show that Richards knew the guns were in his trunk. We note that the stolen pharmaceuticals in the trunk matched the list found in Richards' pocket, and that the marijuana was recovered from inside a duffel bag that also contained items of men's clothing as well as the guns and ammunition. *See United States v. Fuller,* 887 F.2d 144, 147 (8th Cir.1989) (drug paraphernalia admissible to prove motive because of the "close and well-known connection between firearms and drugs"), *cert. denied,* 496 U.S. 908, 110 S.Ct. 2592, 110 L.Ed.2d 273 (1990); *United States v. Simon,* 767 F.2d 524, 526 (8th Cir.) (drug-related evidence found to be "closely and integrally related" to issues of firearm ownership and

---

**2.** Fed.R.Evid. 404(b) states in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive ... preparation, plan, knowledge ... or absence of mistake or accident...."

possession), *cert. denied,* 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985). We note further that also found in the trunk of the car, along with the burglary tools, were a pair of workmen's gloves. A bloody tear on the middle finger of the right glove matched a laceration on Richards' right middle finger.

It is apparent that much of the evidence to which Richards objects was strongly connected to him. The fact that this evidence was found in the trunk, as were the two handguns, and that in some instances the evidence was found in the same bag as the handguns raises the inference that Richards was knowingly possessed of the firearms at the time of his interstate travels and that all of the items in the trunk of the car were under his dominion and control. *See United States v. Aranda,* 963 F.2d 211, 214 (8th Cir.1992) (policies of Rule 404(b) not implicated where "challenged evidence directly supports the existence of the charged criminal [act] without regard to the defendant's character"); *Simon,* 767 F.2d at 527 ("[W]hen as here evidence of an act and evidence of the crime charged are 'inextricably intertwined,' Rule 404(b) does not come into play.") (quoting *United States v. DeLuna,* 763 F.2d 897, 913 (8th Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985)).

Whether or not characterized as Rule 404(b) evidence, the disputed evidence is simply evidence of items found with the guns that are the basis of the charged offense. *Cf. United States v. Moore,* 735 F.2d 289, 292 (8th Cir.1984) (per curiam) (*res gestae* exception to Rule 404(b) permits the "introduction of evidence of other criminal activity" occurring at the time and place where the defendant was arrested in the commission of the charged crime "for the purpose of providing the context in which the crime occurred"). It is clear, based on the record before us, that the District Court did not abuse its discretion in admitting the evidence of the incriminating items seized from Richards' trunk at the same time the firearms were seized.

## IV.

Richards also argues that the District Court erred when it refused to allow Jay Harp to testify as to what Rachel Harp, his sister, told him a week prior to her arrest with Richards. Richards proffered the testimony under Rule 804(b)(3), an exception to the hearsay rule for a statement which "at the time of its making ... so far tended to subject the declarant to ... criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed.R.Evid. 804(b)(3). Evidence offered to exculpate a criminal defendant should not be admitted "unless corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*

Rachel Harp allegedly told her brother that the three guns ultimately recovered in this case were hers, that she was bringing them to Illinois, and that she did not want Richards to know of them. This evidence, Richards contends, would have refuted the inference raised by the government that Richards knew the guns were in his trunk. Richards argues that the statement was against Rachel Harp's penal interest because one of these guns was the one she was carrying in a concealed manner at the time of her arrest and the other two were found in the trunk of the car. This evidence is corroborated, he argues, by the fact that Harp was later discovered with one of the guns and by the fact that the police returned the empty duffel bag to her when she was released after her arrest. The District Court refused the proffer because it ruled the statement was not against Rachel Harp's penal interest. We hold that the District Court was correct.

The plain language of Rule 804(b)(3) clearly requires that the statement be against the declarant's interests *at the time it was made.* There is nothing in the proffered statement that would have subjected Rachel Harp to criminal liability at the time she made it. She is claimed to have told her brother merely that the guns were hers, that she had come by them lawfully, and that she intended to bring

them to Illinois. Only her subsequent behavior, concealing one of the guns in her purse and transporting marijuana, subjected her to criminal liability. Because we hold the District Court was correct in excluding as hearsay the brother's proffered testimony concerning Harp's out-of-court statement on the ground that it did not tend to subject her to criminal liability when made, we need not consider whether the facts presented by Richards as corroboration "clearly indicate" its trustworthiness.

## V.

■ Richards challenges the District Court's denial of his motion for a judgment of acquittal based on the government's failure to establish that he had *knowingly* transported the weapons in interstate commerce. The government responds that no mental state is required to be proven under 18 U.S.C. § 922(g), the statute under which Richards was indicted.[3] Further, the government argues, even if knowledge is required, there is overwhelming evidence from which the jury could infer that Richards was aware of the contents of his trunk and that they were under his dominion and control. Although we hold that knowledge is required, we also hold the District Court did not err in finding that the government had introduced sufficient evidence of Richards' knowing transportation of the firearms to support the jury verdict.

Section 922(g)(1) provides that "[i]t shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce ... any firearm or ammunition." The government contends that it need only establish knowledge when seeking an 18 U.S.C. § 924(a)(2) (1988) penalty for a § 922(g) violation. Section 924(a)(2) provides that "[w]hoever knowingly violates subsection ... (g) ... of section 922 shall be ... imprisoned not

more than ten years." In the present case, however, the government sought the enhanced penalty provided in 18 U.S.C. § 924(e)(1) (1988), which establishes a minimum sentence of fifteen years for violators of § 922(g) who have had three prior convictions for "a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). As § 924(e)(1) contains no express requirement that the § 922(g) violation be done "knowingly," the government argues that no such requirement exists.

The government's argument, in essence, is that knowledge is required only when the § 924(a)(2) penalty for violations of § 922(g) is sought; where an enhanced penalty under § 924(e) is sought, no knowledge is required because the word "knowingly" does not appear in either § 924(e) or § 922(g). We disagree with this argument. We find no reason to believe that Congress intended to subject a defendant to a minimum of 15 years in prison for traveling from state to state with a weapon he did not know he had. Rather, it seems clear that § 924(e)(1) simply enhances the penalties provided by the other subsections of § 924 for violations of § 922(g), and that such violations require the defendant to have acted knowingly. This reading of the statute comports with the ordinary meaning of the term "transport," a term used in § 922(g), as involving an element of possession and an element of movement. "Possession," for purposes of § 922(g), can be actual or constructive, joint or sole, but must be "knowing." *Cf. United States v. Williams*, 941 F.2d 682, 683 (8th Cir.1991) (finding sufficient evidence to support verdict that defendant knowingly possessed firearm); *United States v. Woodall*, 938 F.2d at 837–38 (same); *United States v. Johnson*, 857 F.2d 500, 501–02 (8th Cir. 1988) (affirming the admission into evidence of a bulletproof vest worn by defendant at the time of his arrest to show he knew of the presence of a gun in the car in which he then was sitting; and affirming instructions on the definition of "possession" requiring the element of knowledge

---

**3.** However, the indictment charged that Richards "knowingly did transport" weapons in interstate commerce. Superseding Indictment at

2, *reprinted in* Joint Appendix at 8, 9. The District Court's instructions also required the jury to find that Richards acted knowingly.

on the part of defendant). Therefore, we hold that, in prosecutions under 18 U.S.C. § 922(g), the ordinary usage of the word "transport" requires the government to establish that the defendant acted knowingly, as the indictment and the instructions here required.[4]

■ This is not to say that Richards' motion for a judgment of acquittal should have been granted. A motion for acquittal should be granted only " 'where the evidence, viewed in the light most favorable to the [g]overnment, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged.' " *United States v. Frol*, 518 F.2d 1134, 1137 (8th Cir.1975) (quoting *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973)) (emphasis in *Stephenson*). The record before us makes it clear that the District Court did not err in ruling that the government had presented sufficient evidence for the jury to find that Richards knowingly transported firearms in interstate commerce. The firearms all were discovered in a vehicle that Richards claimed was his and that he had been operating. Two of the guns were found in the trunk of this vehicle, which opened to a key on Richards' key ring. Also found in the trunk were items of men's clothing, numerous papers and identifications bearing Richards' name and signature, gloves that appeared to have been worn by Richards, and stolen pharmaceuticals matching a list found in Richards' pocket. In addition, a witness testified to having seen one of the guns on the front seat of Richards' car while Richards was still in Arizona during the week prior to his arrest. Finally, the evidence of Richards' possession of marijuana and stolen pharmaceuticals tends to show that the firearms found in the car were not there accidentally but were in fact there because Richards intended them to be. *See United States v. Fuller*, 887 F.2d at 147. The evidence, when viewed in the aggregate, is amply sufficient for the jury to find that the requirement of knowledge had been met.

## VI.

■ Richards' last argument is that the District Court erred in denying his motion for a new trial based on newly discovered evidence. The alleged newly discovered evidence consists of an affidavit of Rachel Harp to the effect that Richards did not know of the presence of any of the three guns in the car at the time of the arrest. The affidavit further states that Harp had secreted the guns into the luggage because she knew Richards would not have allowed her to bring them.

Harp pled guilty to charges arising from her arrest with Richards and did so pursuant to a plea agreement in which she promised to provide truthful testimony in cases involving Richards. At the time of Richards' trial, however, Harp, who had been released on bond, had disappeared and efforts by the government and Richards to find her were unsuccessful. Prior to her disappearance, Harp had been interviewed by the government. In this interview, she implicated Richards in a pharmaceutical burglary in Arizona, and gave information connecting him to other activities in Arizona involving controlled substances and firearms. To the belief of the government and as discovery had revealed, she was going to testify that she did not know about any of the items found in the trunk of Richards' car at the time they were arrested. These statements made to the government are substantially recanted in the affidavit on which Richards based his new trial motion.

■ Motions for a new trial based on newly discovered evidence are viewed with disfavor in this circuit. *United States v. Gustafson*, 728 F.2d 1078, 1084 (8th Cir.), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984). "[T]he decision of the

---

4. *See* note 3, *supra.* The instructions also provided a definition of "knowingly," even though it appears that in this circuit the defendant is not entitled to an instruction on the definition of "knowingly." *See United States v. Williams,*

923 F.2d 76, 78 (8th Cir.) (per curiam) (strong dictum; holding based on plain error analysis), *cert. denied,* — U.S. ——, 112 S.Ct. 131, 116 L.Ed.2d 98 (1991).

trial court to grant or deny the motion will not be set aside absent a clear showing of an abuse of discretion." *United States v. Estabrook,* 774 F.2d at 290. To obtain a new trial on the basis of newly discovered evidence, a defendant must show, among other things, that the evidence is in fact newly discovered, *i.e.,* discovered since the trial; and that the newly discovered evidence is of such a nature that, on a new trial, it probably would produce an acquittal. *United States v. Kienzle,* 896 F.2d 326, 330 (8th Cir.1990) (citing *United States v. Begnaud,* 848 F.2d 111, 113–15 (8th Cir.1988)).

 We do not believe Harp's affidavit meets these criteria. Having given information inculpating Richards, Harp was a fugitive from justice at the time of the trial and did not testify. She resurfaced after the trial with a version of her story entirely different from the version she previously had given the government.[5] We have some difficulty in seeing this as "newly discovered evidence" within the meaning of the governing standards in this circuit. Even assuming, however, that her new and different version of the facts amounts to "newly discovered evidence," we cannot say that the District Court abused its discretion in finding that, given Harp's prior inconsistent statements and the fact that she made herself unavailable as a trial witness by jumping bail and dropping out of sight, "her testimony would probably not produce an acquittal of defendant." *United States v. Richards,* No. 91–03198–01–CR–S–4, Order at 4 (W.D.Mo. Nov. 8, 1991), *reprinted in* Joint Appendix at 29, 32. *Cf. United States v. Bednar,* 776 F.2d 236, 238–39 (8th Cir.1985) (newly discovered evidence consisting of an affidavit of grand jury witness who did not testify at trial was not likely to produce an acquittal when the affidavit substantially contradicted witness's grand jury testimony). We see no proper basis for overturning the District Court's denial of Richards' motion for a new trial.

5. Her new and different version of the facts came forth only after she was arrested in Illinois, convicted in Missouri, and sentenced to a prison term of four years.

## VII.

For the reasons stated above, the conviction is affirmed.