**REVISED August 19, 2019**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-60236

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2019

Lyle W. Cayce
Clerk

ROGELIO FLORES-ABARCA,

    Petitioner

v.

WILLIAM P. BARR, U. S. ATTORNEY GENERAL,

    Respondent

Petitions for Review of an Order of the
Board of Immigration Appeals

Before DAVIS, HIGGINSON, and WILLETT, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Rogelio Flores Abarca seeks review of a Board of Immigration Appeals (BIA) decision holding that he is statutorily ineligible for cancellation of removal because of a 2004 firearm transportation conviction. We first conclude that Flores Abarca failed to exhaust his challenge to the immigration court's jurisdiction based on alleged defects in his Notice to Appear. On the merits, we hold that the Oklahoma misdemeanor of transporting a loaded firearm in a motor vehicle is not one of the firearms offenses listed under 8 U.S.C. § 1227(a)(2)(C). Accordingly, this conviction does not disqualify Flores Abarca

No. 17-60236

from seeking cancellation of removal. We grant the petition for review, vacate the BIA's order, and remand for further proceedings.

I.

Flores Abarca is a native and citizen of Mexico. He entered the United States unlawfully in 1988, when he was five years old. He currently lives in Oklahoma and has four U.S. citizen children. In January 2004, Flores Abarca pleaded guilty to the Oklahoma misdemeanor offense of transporting a loaded firearm in a motor vehicle. *See* OKLA. STAT. tit. 21 § 1289.13. In May 2015, the Department of Homeland Security initiated removal proceedings against Flores Abarca, alleging that he was present in the United States without having been admitted or paroled. The Notice to Appear was personally served on Flores Abarca and instructed him to appear before an immigration judge in Dallas at a date and time to be set. Flores Abarca later received a notice of hearing with a specific date and time, and he personally appeared in Dallas immigration court on October 19, 2015. At this hearing, Flores Abarca acknowledged receipt of the Notice to Appear, conceded his removability, and stated that he wished to seek cancellation of removal.

Cancellation of removal is a form of relief available to certain otherwise removable aliens. *See* 8 U.S.C. § 1229b. To be eligible for this relief, a nonpermanent resident such as Flores Abarca must (1) have been continuously physically present in the United States for at least 10 years; (2) demonstrate good moral character during this period; (3) not be convicted of an offense under 8 U.S.C. § 1182(a)(2), § 1227(a)(2), or § 1227(a)(3); and (4) "establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1).

Flores Abarca requested cancellation of removal based on hardship to his four young children and his ailing lawful permanent resident parents. The

No. 17-60236

immigration judge asked for the government's views regarding Flores Abarca's eligibility in light of his firearm transportation conviction. The government stated that it believed Flores Abarca was eligible for cancellation of removal, and that it did not believe that his firearm transportation conviction fell under the statute's firearms provision. The immigration judge nonetheless expressed concern about this conviction and ordered further briefing on the issue. In its brief, the government revised its original position and argued that Flores Abarca is ineligible for cancellation of removal because of his firearm transportation conviction.

After considering the parties' briefs, the immigration judge held that Flores Abarca's conviction for transporting a loaded firearm is a firearms offense described under 8 U.S.C. § 1227(a)(2)(C) and renders him ineligible for cancellation of removal as a matter of law. Flores Abarca appealed his order of removal to the BIA. On March 3, 2017, the BIA affirmed the immigration court in a published and precedential opinion. *See Matter of Flores-Abarca*, 26 I & N Dec. 922 (B.I.A. 2017). Flores Abarca timely moved for reconsideration. While his motion for reconsideration was pending, Flores Abarca filed a motion to remand to the immigration court to permit him to apply for adjustment of status. The BIA denied both motions. Flores Abarca now petitions for review of the BIA's decisions.

## II.

For the first time on appeal, Flores Abarca seeks to challenge alleged defects in his Notice to Appear (NTA). This court generally lacks jurisdiction to consider issues that were not first presented to the BIA. *See Omari v. Holder*, 562 F.3d 314, 318–19 (5th Cir. 2009); *see also* 8 U.S.C. § 1252(d) ("A court may review a final order of removal only if – (1) the alien has exhausted all administrative remedies available to the alien as of right"). Flores Abarca nonetheless contends that he can raise this issue at any time because defects

No. 17-60236

in the NTA undermine the immigration court's subject matter jurisdiction. This argument is foreclosed by our precedent. *See Pierre-Paul v. Barr*, 930 F.3d 684, 693 (5th Cir. 2019) (holding that 8 C.F.R. § 1003.14 is a non-jurisdictional claim processing rule, defects in which are waivable). Because Flores Abarca did not properly exhaust this issue, we lack jurisdiction to consider it. We therefore turn to the merits.

## III.

The BIA held that Flores Abarca is ineligible for cancellation of removal as a matter of law because "the crime of transporting a loaded firearm under Oklahoma law is categorically a firearms offense under" 8 U.S.C. § 1227(a)(2)(C). *Flores-Abarca*, 26 I & N Dec. at 924. Because the BIA reached an independent legal conclusion on this question, "our review is confined to the BIA's analysis and reasoning." *Enrique-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010). With limited exceptions, we may "only affirm the BIA on the basis of its stated rationale for ordering an alien removed from the United States." *Id.* The sole issue before us is therefore the purely legal question of whether Flores Abarca's Oklahoma firearm transportation conviction is categorically a disqualifying firearms offense under § 1227(a)(2)(C). We have jurisdiction to consider this legal issue. *See* 8 U.S.C. § 1252(a)(2)(D).

## A.

We first review the relevant statutory framework. A nonpermanent resident does not qualify for cancellation of removal if he has "been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3)" of Title 8 of the U.S. Code. 8 U.S.C. § 1229b(b)(1)(C). The specific provision at issue in this case is § 1227(a)(2)(C), which renders deportable "[a]ny alien who at any time after admission is convicted" of certain firearms offenses. As a threshold matter,

No. 17-60236

Flores Abarca contends that § 1227(a)(2)(C) does not apply to him because he was never admitted to the United States.[1]

This argument is foreclosed by our precedent. Flores Abarca was not charged with being removable under § 1227(a)(2)(C). This provision is relevant to this case only because it is cross-referenced in the cancellation of removal statute. *See* § 1229b(b)(1)(C). We have held that this statutory cross-reference simply "identif[ies] the *kinds of offenses* that will make an alien ineligible for cancellation of removal." *Nino v. Holder*, 690 F.3d 691, 697 (5th Cir. 2012) (emphasis added). "For purposes of that ineligibility, it does not matter when the offense occurred in relation to the alien's admission." *Id.* at 697–98; *see also Aleman v. Holder*, 541 F. App'x 457, 459 (5th Cir. 2013) ("*Nino v. Holder* held the plain language of § 1229b(b)(1)(C) unambiguously refers to the elements of the offenses set forth in the three statutes and does not refer to any aspects of immigration law.").

Flores Abarca is therefore ineligible for cancellation of removal if he was convicted of an offense listed in § 1227(a)(2)(C), regardless of whether he had been admitted to the United States at the time of conviction. This provision reads in full:

**(C) Certain firearm offenses**

Any alien who at any time after admission is convicted under any law of purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying, or of attempting or conspiring to purchase, sell, offer for sale, exchange, use, own, possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of Title 18) in violation of any law is deportable.

---

[1]     We note that Flores Abarca failed to properly exhaust this issue before the BIA. *See Omari*, 562 F.3d at 319. Yet, as the government recognizes, exhaustion is not required when the BIA has no power to grant the requested relief because of binding circuit precedent. *See Arce-Vences v. Mukasey*, 512 F.3d 167, 172 (5th Cir. 2007). That is the case here.

No. 17-60236

8 U.S.C. § 1227(a)(2)(C).

The list of offenses in the statute does not include a conviction for "transporting" a firearm in violation of any law.

The BIA reasoned, however, that "[a] plain reading of the statute makes 'clear that Congress intended [it] to embrace the entire panoply of firearms offenses.'" *Flores-Abarca*, 26 I & N Dec. at 923 (quoting *Valerio-Ochoa v. INS*, 241 F.3d 1092, 1095 (9th Cir. 2001)). The BIA further held that Flores Abarca "necessarily had constructive 'possession' of the firearm for purposes of" § 1227(a)(2)(C) when he violated the Oklahoma firearm transportation statute. *Id.* Finally, the BIA opined that "it would be illogical to hold that unlawful possession of a loaded firearm would fall within the scope of [§ 1227(a)(2)(C)] but that unlawfully transporting the same weapon would not." *Id.* at 924. We address each rationale in turn.

B.

The government urges us to hold that a plain reading of the statute demonstrates that Congress intended § 1227(a)(2)(C) "to apply broadly to any type of firearm offense." Alternatively, the government asks us to accord *Chevron* deference to the BIA's view that the statute encompasses "firearms offenses of any type." Although this expansive reading would certainly simplify our analysis, we decline the government's invitation to rewrite the statutory text.

We review the BIA's "legal conclusions *de novo* unless a conclusion embodies the Board's interpretation of an ambiguous provision of a statute that it administers." *Singh v. Gonzales*, 436 F.3d 484, 487 (5th Cir. 2006). In the latter situation, a precedential decision by the BIA "is entitled to the deference prescribed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984)." *Ali v. Lynch*, 814 F.3d 306, 309 (5th Cir. 2016) (cleaned up). "If Congress has explicitly left a gap for the agency to fill, there

is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012) (quoting *Chevron*, 467 U.S. at 843–44). Before according an agency *Chevron* deference, however, the "court must determine first whether Congress has directly spoken to the question at issue." *Id.* "If so, the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*

The BIA's decision in this case is published and precedential, and thus eligible for *Chevron* deference. *See Flores-Abarca*, 26 I & N Dec. 922. But neither the BIA nor the government on appeal identify any ambiguity in the firearms offense provision. The BIA instead relied on its "plain reading of the statute." *Id.* at 923. "*Chevron* deference must be reflective, not reflexive." *Forrest Gen. Hosp. v. Azar*, 926 F.3d 221, 228 (5th Cir. 2019). Absent statutory ambiguity, the government may not invoke *Chevron* to shield agency reasoning from judicial scrutiny. *Id.*; *Orellana-Monson*, 685 F.3d at 517.

The text of § 1227(a)(2)(C) is neither vague nor unclear. Rather, it unambiguously renders a large number of firearms convictions grounds for deportation. The provision applies to any alien, including legal permanent residents, convicted of "purchasing, selling, offering for sale, exchanging, using, owning, possessing, or carrying . . . a firearm or destructive device," or "of attempting or conspiring" to commit any of these offenses. 8 U.S.C. § 1227(a)(2)(C). Contrary to the government's position, however, the statute does not state that "any type of firearm offense" is a basis for deportation. Nor does the statute on its face reach "the entire panoply of firearms offenses." *Flores-Abarca*, 26 I & N Dec. at 923 (quotation omitted). If that were Congress's intent, it could easily have said so. The same statute, for example, renders deportable any alien convicted of violating "*any law or regulation* of a State, the United States, or a foreign country *relating to* a controlled substance (as

7

No. 17-60236

defined in section 802 of Title 21)," with a narrow exception for personal marijuana possession. 8 U.S.C. § 1227(a)(2)(B)(i) (emphasis added).

Congress could have used the same language to render deportable any alien convicted of violating any law "relating to" a firearm. Instead, Congress chose to enumerate a list of offenses. *See Dep't of Homeland Security v. MacLean*, 135 S. Ct. 913, 919 (2015) (explaining that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another"). Reflecting that choice, the provision is titled "Certain firearm offenses." *See Yates v. United States*, 135 S. Ct. 1074, 1083 (2015) (explaining that while "headings are not commanding, they supply cues" as to the intended scope of a statute).

Notably, despite the expansive language of the controlled substance provision, the Supreme Court has declined to hold that Congress intended to deport every alien convicted of a drug offense. In *Mellouli v. Lynch*, the government argued that "aliens who commit drug crimes in States whose drug schedules substantially overlap the federal schedules are removable, for state statutes that criminalize hundreds of federally controlled drugs and a handful of similar substances, are laws relating to federally controlled substances." 135 S. Ct. 1980, 1989 (2015) (quotation omitted). The Court rejected this construction of § 1227(a)(2)(B)(i), explaining that "[t]his sweeping interpretation departs so sharply from the statute's text and history that it cannot be considered a permissible reading." *Id.* at 1990. The Court also refused to adopt the BIA's view that the statute covers all drug paraphernalia convictions on the grounds that drug paraphernalia statutes relate to "the drug trade in general." *Id.* at 1988–89. The Court instead held that, "to trigger removal under § 1227(a)(2)(B)(i), the Government must connect an element of the alien's conviction to a drug 'defined in [§ 802].'" *Id.* at 1991.

8

No. 17-60236

The same logic applies here. A firearm conviction cannot trigger deportation or ineligibility for cancellation of removal under § 1227(a)(2)(C) unless it fits within one of the statutorily enumerated offenses. This construction is consistent with our prior applications of this statute, as well as that of other circuits. *See Segovia-Rivas v. Lynch*, 643 F. App'x 367, 369 (5th Cir. 2016) (holding that a conviction for "Attempted Deadly Conduct—Discharge of a Firearm" is categorically an offense covered by § 1227(a)(2)(C) because "[d]ischarging a firearm clearly involves *use* of a firearm") (emphasis added); *Aybar-Alejo v. INS*, 230 F.3d 487, 488–89 (1st Cir. 2000) (explaining that a conviction for firearm possession under Rhode Island law is not broader than possession under federal law); *Lopez-Amaro v. INS*, 25 F.3d 986, 989–90 (11th Cir. 1994) (holding that "first degree murder with a pistol" qualifies as "using a firearm in violation of any law").

The government contends that several other circuits have interpreted § 1227(a)(2)(C) more expansively to "embrace the entire panoply of firearms offenses." *Valerio-Ochoa*, 241 F.3d at 1095; *see also Kuhali v. Reno,* 266 F.3d 93, 103 (2d Cir. 2001); *Hall v. INS*, 167 F.3d 852, 855 (4th Cir. 1999). The cases cited do include some broad language regarding the scope of the firearms provision. But our sister circuits took care to locate the petitioner's particular conviction within one of the enumerated offenses. *See Valerio-Ochoa*, 241 F.3d at 1095–96 (explaining that a conviction for "willfully discharg[ing] a firearm" clearly "qualifies as 'using' a firearm under 8 U.S.C. § 1227(a)(2)(C)"); *Kuhali,* 266 F.3d at 105 (finding that exporting firearms without a license involves "possessing" a firearm because "the power to send or take a commodity out of the country necessarily implies—because of the exercise of dominion or control—at least constructive possession"); *Hall*, 167 F.3d at 856 (holding that a conviction for making false statements in connection with the acquisition of a firearm was a conviction for "purchasing or attempting to purchase" a firearm

under § 1227(a)(2)(C) because the petitioner "participated in and enabled an unlawful purchase of a firearm"). These cases do not stand for the proposition that either the BIA or the courts are free to disregard the statute's list of enumerated offenses.

Despite its own broad language, the BIA similarly went on to consider whether Flores Abarca's firearm transportation offense is a conviction for "possessing" a firearm under § 1227(a)(2)(C). *See Flores-Abarca*, 26 I & N Dec. at 923. We now review that determination.

## C.

Flores Abarca is ineligible for cancellation of removal if he was "convicted under any law of . . . possessing . . . a firearm or destructive device." 8 U.S.C. § 1227(a)(2)(C). The BIA held that Flores Abarca "necessarily had constructive 'possession' of the firearm" when he "knowingly and willfully transported" it in his vehicle, and "conclude[d] that the crime of transporting a loaded firearm under Oklahoma law is categorically a firearms offense under the Act." *Flores-Abarca*, 26 I&N Dec. at 923–24. Our analysis of federal and Oklahoma law compels a different conclusion.

Like the BIA, we must analyze Flores Abarca's conviction under the categorical approach. *See Moncrieffe v. Holder,* 569 U.S. 184, 192 (2013); *Segovia-Rivas*, 643 F. App'x at 369. "Because Congress predicated deportation on convictions, not conduct, the approach looks to the statutory definition of the offense of conviction, not to the particulars of an alien's behavior." *Mellouli*, 135 S. Ct. at 1986 (quotation omitted). "[A] state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved facts equating to the generic federal offense." *Moncrieffe*, 569 U.S. at 190 (cleaned up). "[W]e are to look to the conviction itself as our starting place, not to what might have or could have been charged." *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 576 (2010). In the context of a guilty plea, a

conviction is a categorical match "only if the defendant 'necessarily admitted [the] elements of the generic offense.'" *Descamps v. United States*, 570 U.S. 254, 262 (2013) (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

Because we find that § 1227(a)(2)(C) "is unambiguous according to its plain language with respect to the question presented," we review the BIA's legal conclusions de novo. *Miresles-Zuniga v. Holder*, 743 F.3d 110, 112 (5th Cir. 2014). We also review de novo the BIA's interpretation of Flores Abarca's Oklahoma offense, as "[d]etermining a particular federal or state crime's elements lies beyond the scope of the BIA's delegated power or accumulated expertise." *Omagah v. Ashcroft*, 288 F.3d 254, 258 (5th Cir. 2002); *see also Sarmientos v. Holder*, 742 F.3d 624, 627 (5th Cir. 2014) ("[N]o deference is afforded in reviewing the BIA's interpretation of state criminal law.").

We first outline the elements of the generic federal offense of unlawful firearm possession. Under federal law, "possession" includes constructive possession. *See Henderson v. United States*, 135 S. Ct. 1780, 1784 (2015); *see also Aybar-Alejo*, 230 F.3d at 488–89 (collecting cases). "Actual possession exists when a person has direct physical control over a thing," whereas "[c]onstructive possession is established when a person, though lacking such physical custody, still has the power and intent to exercise control over the object." *Henderson*, 135 S. Ct. at 1784. Yet mere possession of a firearm is not a criminal offense.[2] *See District of Columbia v. Heller*, 554 U.S. 570, 636 (2008). "Assuming compliance with ordinary licensing requirements, the possession of a gun can be entirely innocent." *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). The plain meaning of "possessing . . . a firearm . . . in violation of any

---

[2]    Although Congress has restricted the rights of unlawfully present aliens to possess firearms, the offenses listed in § 1227(a)(2)(C) apply to *any* alien, including legal permanent residents. *See, e.g., Valerio-Ochoa*, 241 F.3d at 1094.

law" under § 1227(a)(2)(C) therefore requires that the possession be in some respect unlawful.

The parties agree that the elements of Flores Abarca's Oklahoma offense are: (1) knowingly; (2) willfully; (3) transporting; (4) a specified firearm; (5) that is loaded; (6) in the interior/(locked exterior compartment)/trunk; (7) of a motor vehicle; (8) on a public highway or roadway. *See* Okla. Unif. Jury Instr. CR 6-37A; *see also Flores-Abarca*, 26 I & N Dec. at 923. These elements do not include possession, much less unlawful possession.[3] On its face, the statute is therefore not a categorical match to the generic federal offense of unlawful firearm possession. *See Moncrieffe*, 569 U.S. at 190.

To resist this conclusion, the government argues that Flores Abarca's act of transporting a loaded firearm necessarily encompassed the possession or constructive possession of a firearm. The parties have not briefed the issue of whether an element of possession is sufficient to transform a conviction for a different firearms offense into a conviction for possessing a firearm within the meaning of § 1227(a)(2)(C). We have some doubts about this assumption.[4] Even accepting the government's framing of the issue, however, it is not the case that the Oklahoma offense of transporting a loaded firearm requires that the defendant actually or constructively possess a firearm.

---

[3]     Oklahoma law recognizes separate offenses of unlawful firearm possession. *See, e.g.*, OKLA. STAT. tit. 21 § 1280.1 (possession of a firearm on school property); § 1283 (possession of a firearm by a convicted felon). A conviction for one of these offenses does require proof of possession. *See* Okla. Unif. Jury Instr. CR 6-37 (outlining the elements of "unlawful possession of a firearm" as (1) knowing; (2) willful; (3) possession of/having under one's immediate control; (4) a specified firearm; and (5) the specific ground for unlawfulness).

[4]     We note that construing a conviction for "possessing" a firearm under § 1227(a)(2)(C) to include firearm convictions involving lawful possession plus an illegal act might render superfluous many of the other enumerated offenses, including "using," and "carrying" a firearm. *See Bailey v. United States*, 516 U.S. 137, 146 (1995) (adopting a limited reading of "use" of a firearm to avoid creating redundancy with the term "carry").

No. 17-60236

The term "transport" does not necessarily imply possession. The driver of a vehicle can transport passengers and their possessions without having the "power and intent to exercise control over" every object in the vehicle. *Henderson*, 135 S. Ct. at 1784. As we have been clear, "dominion over the vehicle . . . alone cannot establish constructive possession of a weapon found in the vehicle, particularly in the face of evidence that strongly suggests that somebody else exercised dominion and control over the weapon." *United States v. Wright*, 24 F.3d 732, 735 (5th Cir. 1994); *see also United States v. Melancon*, 662 F.3d 708, 713 (5th Cir. 2011) ("Where two people jointly occupy a space, dominion over the space is not enough by itself to establish constructive possession."). Although knowledge of a firearm's presence may be *evidence* of possession, knowing transportation does not conclusively establish constructive possession as a matter of law. *See Wright*, 24 F.3d at 735 (explaining that "whether constructive possession exists is not a scientific inquiry" and requires "a common sense, fact-specific approach"); *United States v. Crain*, 33 F.3d 480, 486–87 (5th Cir. 1994) (finding insufficient evidence that defendant driver exercised constructive possession over drugs found in the vehicle).

Oklahoma's criminal prohibition against transporting loaded firearms in vehicles clearly extends to firearms possessed by passengers. At the time of Flores Abarca's offense, the relevant statute read as follows:

> Except as otherwise provided by . . . another provision of law of this state, it shall be unlawful to transport a loaded pistol, rifle, or shotgun in any landborne motor vehicle over a public highway or roadway. However, a rifle or shotgun may be transported when clip or magazine loaded and not chamber loaded when transported in an exterior locked compartment of the vehicle or trunk of the vehicle.

> Any person convicted of a violation of this section shall be punished as provided in Section 1289.15 of this title.

No. 17-60236

Any person who is the operator of a vehicle or is a passenger in any vehicle wherein another person who is licensed pursuant to the Oklahoma Self-Defense Act, Sections 1 through 25 of this act, to carry a concealed handgun and is carrying a concealed handgun or has concealed the handgun in such vehicle, shall not be deemed in violation of the provisions of this section provided the licensee is in or near the vehicle.

OKLA. STAT. tit. 21 § 1289.13 (2003).

The statute's final paragraph protects a driver from liability if his passenger has a concealed carry license. But a driver would have no such safe harbor if he knowingly gave a ride to an armed passenger who lacked a concealed carry license. Even in cases where a defendant does have possession of a firearm as a factual matter, Oklahoma is never required to *prove* possession or constructive possession to obtain a conviction under this statute. Flores Abarca thus did not "necessarily admit[] the elements of the generic offense" of unlawful firearm possession by pleading guilty to this Oklahoma transportation offense. *Descamps*, 570 U.S. at 262 (quotation omitted).

The BIA's contrary conclusion relied on a statement in *United States v. Bass*, that "virtually all transportations, whether interstate or intrastate, involve an accompanying possession or receipt." 404 U.S. 336, 340 (1971); *Flores-Abarca*, 26 I & N Dec. at 924. This factual observation regarding the frequent overlap between transportation and possession offenses does not alter our analysis. The question presented in *Bass* was whether the federal prohibition on felons possessing, receiving, or transporting firearms requires proof of a connection to interstate commerce in every case. 404 U.S. at 339. The Court held that "the phrase 'in commerce or affecting commerce' is part of all three offenses" rather than modifying only the transport offense. *Id.* at 347. The Supreme Court did *not* hold that the prohibition against felons transporting a firearm is redundant of the prohibition against possession, nor

14

that all federal transportation offenses require proof of possession.[5] Such holdings would have been consequential for federal criminal law, increasing the government's burden of proof in transportation prosecutions and introducing redundancy in the federal criminal code. *See, e.g.,* 18 U.S.C. § 922(g), (h)(1), (k). But that was not the issue presented in *Bass*, and it is not the issue the Court decided.

Importantly, the Supreme Court's later decision in *Muscarello v. United States*, 524 U.S. 125 (1998), makes clear that transportation offenses remain distinct from possession offenses. The Court in *Muscarello* held that the phrase "carries a firearm" in 18 U.S.C. § 924(c)(1) "applies to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Id.* at 126–27. In a dissenting opinion, Justice Ginsburg argued that this definition better describes the term "transport" than the term "carry." *Id.* at 146–48.[6] She noted that other federal statutes use the term "transport" rather than "carry" to "describ[e] when and how a person may travel in a vehicle that contains his firearms." *Id.* at 146–47 (citing 18 U.S.C §§ 925(a)(2)(B) and 926A). A majority of the Court disagreed, explaining that its "definition does not equate 'carry' and 'transport.'" *Id.* at 134. "'Carry' implies personal agency and *some degree*

---

[5]    We were not aided by the government's briefing on this point, which incorrectly attributed language from *Malilia v. Holder*, 632 F.3d 598, 604 (9th Cir. 2011) to *Bass* itself. This inaccurate citation was inquired into, but not corrected, at oral argument. We should not need to remind the government that, although we are bound by the precedent of the Supreme Court, we are not bound by another circuit's interpretation of that precedent. In any event, we do not find support in *Bass* for the proposition that "establishing that a firearm traveled interstate necessarily requires some element of possession." *Malilia*, 632 F.3d at 604. We similarly part ways with the Second Circuit's interpretation of *Bass* to imply an element of possession in transportation offenses. *See Kuhali*, 266 F.3d at 105.

[6]    The Eighth Circuit expressed a similar view in a case predating *Muscarello*. *See United States v. Richards*, 967 F.2d 1189, 1195 (8th Cir. 1992) (construing "the ordinary meaning of the term 'transport' . . . as involving an element of possession and an element of movement").

15

*of possession, whereas 'transport' does not have such a limited connotation* and, in addition, implies the movement of goods in bulk over great distances." *Id.* (emphasis added).

This distinction is fully consistent with our construction of the Oklahoma statute at issue in this case. Although carrying a firearm requires "some degree of possession," transporting a firearm does not. *Id.* The government attempts to distinguish *Muscarello* by arguing that the Supreme Court understood "transport" to refer only to the "movement of goods in bulk," whereas Flores Abarca's Oklahoma transportation offense is more akin to "carrying." *Id.* This argument is unavailing. The Supreme Court discussed several statutes that apply the term "transport" to single firearms. *See id.* at 134–36; *see also* 18 U.S.C § 924(b) (imposing criminal penalties on someone who "transports . . . a firearm" with intent to commit a felony). Notably, the statute most central to the disagreement between the majority and the dissent, 18 U.S.C. § 926A, uses the term "transport" in precisely the same context as the Oklahoma statute at issue here. *See id.* (providing that individuals are "entitled to transport a firearm for any lawful purpose," so long as "during such transportation the firearm is unloaded" and not "directly accessible from the passenger compartment of such transporting vehicle"). The Court specifically addressed § 926A and reiterated its conclusion that "the word 'transport' is broader than the word 'carry.'" *Muscarello*, 524 U.S. at 135. We have no basis to conclude that the term "transport" has a different meaning under Oklahoma law than under federal law.[7]

---

[7]    The government represented at oral argument that its briefing and the BIA's opinion had relied on Oklahoma caselaw interpreting transportation to require an element of constructive possession. As the government commendably acknowledged in a post-argument letter to the court, this representation was mistaken. The government's letter belatedly points us to a decision from the Oklahoma Court of Criminal Appeals, *Allen v. State*, 871 P.2d 79 (Okla. Crim. App. 1994), as support for its position. We emphasize that "[t]he

No. 17-60236

We acknowledge that our analysis is in tension with the outcome reached by the Eighth Circuit in *Awad v. Gonzales*, 494 F.3d 723 (8th Cir. 2007). Awad, a legal permanent resident and "a sport hunter lawfully hunting," was cited for transporting a loaded hunting rifle in his vehicle. *Id.* at 724. The BIA held that this misdemeanor game and fish law violation rendered Awad deportable under § 1227(a)(2)(C). *Id.* at 724–25. Awad petitioned for review, arguing that his hunting rifle fell within an exception to the federal definition of a firearm. *Id.* at 725. The court rejected this argument and affirmed. *Id.* at 726–27. The issue of whether § 1227(a)(2)(C) encompasses transportation offenses was apparently not raised before the Eighth Circuit, and the court did not squarely address it. Instead, the court deferred to the BIA without examining the specific offenses enumerated in § 1227(a)(2)(C) or identifying any ambiguity in the statutory language. *Id.* at 725. We therefore do not find *Awad* persuasive as to the question presented in this appeal.

In sum, we hold that Flores Abarca's misdemeanor conviction for unlawfully transporting a loaded firearm in a motor vehicle does not include unlawful possession as a necessary element and does not categorically match an offense listed under 8 U.S.C. § 1227(a)(2)(C).

---

proper time to closely examine the record and develop legal defenses is *before* the completion of briefing," not after oral argument. *United States v. Arellano-Banuelos*, 912 F.3d 862, 865 n.2 (5th Cir. 2019). Even if the government's new argument were properly before us, it would not affect our conclusion. The defendant in *Allen* was charged with "carrying a loaded firearm." 871 P.2d at 102. The Oklahoma Court of Criminal Appeals reversed this conviction, explaining that simple possession of a firearm is not a crime. *Id.* at 103. To constitute a crime, the "carrying" must be unlawful in some additional way, such as "carrying a loaded firearm in a vehicle" or "carrying any firearm after conviction of a felony." *Id.* The Oklahoma court did not, however, hold that "carrying" a firearm is the *only* means to commit the offense of unlawful transportation of a firearm in a motor vehicle. Rather, its decision is consistent with the proposition that "'transport' is a broader category that includes 'carry' but also encompasses other activity." *Muscarello*, 524 U.S. at 135.

No. 17-60236

D.

Finally, we address the BIA's view that omitting firearm transportation offenses from the scope of § 1227(a)(2)(C) is "illogical" and inconsistent with legislative history. *Flores-Abarca*, 26 I&N Dec. at 924. The BIA observes that, in the original version of the statute, "only the crimes of 'possessing or carrying' a firearm were a basis for deportation." *Id.* "Subsequent legislation expanded the deportable offenses to the current extensive list of crimes, as well as attempts and conspiracies to commit them." *Id.* This history, however, can be read in multiple ways. On the one hand, Congress may have wished to expand the reach of § 1227(a)(2)(C) to cover all firearms offenses, and simply neglected to include the term "transporting" when amending the statute. Such an oversight would be somewhat surprising, as federal criminal law extensively regulates the transportation of firearms. *See, e.g.,* 18 U.S.C. § 922(a)(1)–(5), (i), (n), § 924(b). On the other hand, Congress may have made a deliberate choice to add some firearms offenses but not others. Regardless, "[w]e cannot replace the actual text with speculation as to Congress' intent." *Magwood v. Patterson*, 561 U.S. 320, 334 (2010).

Nor can we substitute either the BIA's policy views or our own judgment for that of Congress. *See Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). Congress clearly intended to render deportable most aliens convicted of gun crimes, but it chose to effectuate this goal by specifying a list of offenses. "Legislation is, after all, the art of compromise, the limitations expressed in statutory terms often the price of passage, and no statute yet known pursues its stated purpose at all costs." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017) (cleaned up). We must therefore "presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut National Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

"[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (cleaned up). Here, a plain reading of the statute produces no absurd results. The BIA maintains that it would be "illogical to hold that unlawful possession of a loaded firearm would fall within the scope of [§ 1227(a)(2)(C)] but that unlawfully transporting the same weapon would not." *Flores-Abarca*, 26 I&N Dec. at 924. We disagree. As previously emphasized, firearms are not inherently illicit. An individual can commit a transportation offense even if transporting a legally-owned firearm from one lawful location to another, for an entirely lawful purpose. *See, e.g., Awad*, 494 F.3d at 724 (noting that Awad was "a sport hunter lawfully hunting" when he was cited for transporting a loaded hunting rifle). Moreover, mere transportation lacks the elements of unlawful possession or use that can make firearm offenses particularly dangerous. *See, e.g., Muscarello*, 524 U.S. at 135–36 (noting that Congress "impose[d] a less strict sentencing regime" on firearm transport offenses under 18 U.S.C. § 924(b) than firearm carrying offenses under § 924(c)).

It is thus rational for Congress to treat unlawful firearm transportation differently from unlawful possession. We also note that § 1227(a)(2)(C) is not the sole removal provision applicable to firearms offenses. Congress has separately designated certain serious firearm transportation offenses as aggravated felonies, including transporting a firearm with the intent to commit a felony. *See* 8 U.S.C. § 1101(43)(E)(ii); *see also* 18 U.S.C. § 922(g)(1)–(5); § 922(n); § 924(b). An alien convicted of one of these offenses is deportable under § 1227(a)(2)(A)(iii), notwithstanding our construction of § 1227(a)(2)(C). The statutory scheme as a whole does not create any illogical gaps in immigration enforcement.

No. 17-60236

IV.

Flores Abarca's Oklahoma firearm transportation conviction is not an offense under 8 U.S.C. § 1227(a)(2)(C) and does not render him statutorily ineligible for cancellation of removal. In light of this holding, we need not reach the question of whether the BIA abused its discretion in denying Flores Abarca's motions for reconsideration and remand.

We GRANT the petition for review, VACATE the decision of the BIA, and REMAND for further proceedings not inconsistent with this opinion.